UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BANK OF AMERICA, N.A.,

                *Petitioner*,

- against -

CITY VIEW BLINDS OF N.Y. INC., COSMOPOLITAN
INTERIOR NY CORPORATION, JLM DECORATING
NYC INC., COSMOPOLITAN INTERIOR FLORIDA
CORP., MOSHE GOLD, SIGNATURE BANK, AND
RAIZY GOLD,

                *Respondents.*
-------------------------------------------------------------------X

Case No.: 1:22-cv-09871-LTS-JW

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS CITY VIEW BLINDS OF N.Y. INC., COSMOPOLITAN INTERIOR NY CORPORATION, JLM DECORATING NYC INC., COSMOPOLITAN INTERIOR FLORIDA CORP., MOSHE GOLD, AND RAIZY GOLD'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

OVED & OVED LLP
*Attorneys for Respondents
City View Blinds of N.Y. Inc.,
Cosmopolitan Interior NY
Corporation, JLM Decorating NYC
Inc., Cosmopolitan Interior Florida
Corp., Moshe Gold, and Raizy Gold*
401 Greenwich Street
New York, New York 10013
Tel. 212.226.2700

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.    Raizy's Account and the Insurance Policy ............................................... 2

    B.    Bank of America Restrains Raizy's Account to Satisfy a Judgment Against the Judgment Debtors, Not Against Raizy .............................. 4

    C.    Bank of America Files this Turnover Action ........................................... 5

    D.    Discovery Confirms that Raizy Is the Sole Owner of the Funds in Raizy's Account ........................................... 5

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT .................................................................................................................. 10

    I.    Respondents Are Entitled to Summary Judgment Dismissing Petitioner's Fifth Cause of Action and Declaring That Raizy Is the Sole Owner of the Funds in Raizy's Account .......... 10

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Deutsch v. Upper Level*,
    648 N.Y.S.2d 601 (1st Dep't 1996) ..................................................................14

*Edelson v. Cheung*,
    No. 20-MC-1995 (ARR)(SJB),
    2023 U.S. Dist. LEXIS 34105 (E.D.N.Y. Mar. 1, 2023) ......................................10, 11, 14

*Filippi v. Filippi*,
    53 A.D.2d 658 (2d Dep't 1976) ................................................................. 10-13

*In re Carella*,
    340 B.R. 710 (Bankr. W.D.N.Y. 2006) ....................................................... 11-13

*Jacks v. D'Ambrosio*,
    69 A.D.3d 574 (2d Dep't 2010) ......................................................................12

*Pinasco v. Ara*,
    219 A.D.2d 540 (1st Dep't 1995) ..............................................................12, 13

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    449 F. Supp. 3d 333 (S.D.N.Y. 2020)...................................................................9

*Viggiano v. Viggiano*,
    136 A.D.2d 630 (2d Dep't 1988) ..................................................................14

*Wacikowski v. Wacikowski*,
    93 A.D.2d 885 (2d Dep't 1983) ........................................................11, 13, 14

*Windward Bora, LLC v. Mohamed*,
    No. 21-CV-3736-LTS-JW,
    2023 U.S. Dist. LEXIS 228695 (S.D.N.Y. Dec. 22, 2023) .................................9

Respondents City View Blinds of N.Y. Inc., Cosmopolitan Interior NY Corporation, JLM Decorating NYC Inc., Cosmopolitan Interior Florida Corp., Moshe Gold ("Moshe") (collectively, "Judgment Debtors"), and Raizy Gold ("Raizy" and collectively with Judgment Debtors, "Respondents"), by and through their attorneys, Oved & Oved LLP, respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure ("FRCP") 56(a) for an order granting partial summary judgment (i) dismissing the fifth cause of action for turnover in the Verified Petition (the "Petition") filed by Petitioner Bank of America, N.A. ("Bank of America" or "Petitioner"); (ii) declaring that Raizy is the sole owner of the funds in the Flagstar Bank account (formerly Signature Bank, and referred to as "Signature Bank" for consistency) ending in *8641 ("Raizy's Account"); and (iii) lifting the restraints on that account.

## PRELIMINARY STATEMENT

It is undisputed that all of the money in Raizy's Account belongs solely to Raizy, who is not one of the Judgment Debtors. Both documentary evidence and unrebutted deposition testimony adduced in discovery confirm that ***more than 99.99%*** of the funds in Raizy's Account is comprised of proceeds from a life insurance policy that Moshe assigned to Raizy, his wife, in May 2015, more than ***five years before*** Bank of America even commenced an action against Moshe and the other Judgment Debtors and seven years before Bank of America obtained a judgment against them.

Likewise, discovery confirmed that Raizy has always controlled Raizy's Account, which she primarily used to pay for expenses associated with her children's weddings. Similarly, the testimony establishes that Raizy included Moshe as a joint owner on the account solely for her convenience, including so that she could direct him to write checks to pay for specific expenses, and so that Moshe would have ready access to these funds in the event of an emergency, such as

Raizy's death or disability. This testimony is both unrebutted and corroborated by bank records demonstrating that Raizy controlled Raizy's Account and used it virtually exclusively to pay for her children's wedding expenses. Under well-settled law, this evidence amply rebuts the presumption of joint ownership of Raizy's Account, thereby invalidating Bank of America's turnover claim seeking to levy on those funds.

## BACKGROUND

**A.** **Raizy's Account and the Insurance Policy**

On or about September 28, 2002, the John Hancock Life Insurance Company issued a life insurance policy (the "Insurance Policy") to Moshe's mother, Helena Gold. Respondent's Statement of Material Facts ("SMF") ¶ 1; *see also* Declaration of Andrew L. Kincaid, dated June 21, 2024 ("Kincaid Decl."), **Ex. A** ("Raizy Tr.") 114:11-23; 115:2; Kincaid Decl., **Ex. B** ("Moshe Tr.") 122:7-12. The Insurance Policy identified Moshe as the beneficiary. SMF ¶ 2; *see also* Declaration of Raizy Gold, dated June 18, 2024 ("Raizy Decl."), **Ex. 1** (the Insurance Policy).

In approximately 2010, Raizy opened the account ending *8641 at Signature Bank with her husband, Moshe, primarily so that she could pay for expenses associated with her children's weddings, and, accordingly, she specifically named it the "Moshe Gold & Raizy Gold - Wedding Account" in the account opening documents. *See* SMF ¶¶ 3-4; Raizy Decl. ¶ 5 & **Ex. 2**; Raizy Tr. at 59:3-61:19. Likewise, while Raizy opened the account with Moshe, she did so for her own convenience, so that she could more easily direct Moshe to write checks to pay for wedding expenses or execute other specific transactions at her direction, rather than have to write every check herself. SMF ¶ 5; *see also* Raizy Tr. at 63:14-16 ("It's my account, and I issue the checks unless I ask him to do some checks which I do, at times."); Raizy Decl. ¶ 6. Additionally, by naming Moshe on the account, Raizy also ensured that Moshe would be able to access the funds

in the event of an emergency, such as in the event of Raizy's death, disability, or illness. SMF ¶ 6; *see also* Raizy Tr. at 70:4-17 (confirming that the statement in paragraph 18 of the exhibit that, "Moshe has been named on Raizy's Account since it was opened and has remained named on the account solely for convenience and emergency purposes, such as in the event of Raizy's death, disability, or illness" is "part of the reason" for the account, and that the "other part" was that it is the "wedding account"); *see also* Raizy Decl. ¶ 7.

In 2015, Moshe decided to assign the Insurance Policy to Raizy to ensure that in the event of Moshe's death, disability, or illness, Raizy would have at least the proceeds of the Insurance Policy to pay for her living expenses and provide for their children. Raizy Decl. ¶ 9; *see also* Moshe Tr. at 40:21-25; 41:1-3, 21-23; 42:5-11. Accordingly, on Raizy's birthday, May 22, 2015, Moshe assigned his entire ownership of and interest in the Insurance Policy to Raizy by a duly notarized Assignment of Life Insurance Policy (the "Assignment"). SMF ¶ 7; *see also* Raizy Decl. ¶ 10 & **Ex. 3** ("Assignment"); Raizy Tr. at 119:23-25; 120:1-5; 121:4; 122:20 (the Assignment "was a gift to me" and it "was a surprise gift"). Pursuant to the Assignment, any and all amounts payable under the Insurance Policy belong entirely to Raizy, and Moshe has no interest in or ownership over those proceeds. SMF ¶ 8; Raizy Decl. ¶ 11; Raizy Tr. at 120:24-25; 121:4.

On June 22, 2022, Helena Gold passed away. SMF ¶ 10; Raizy Decl. ¶ 12 & **Ex. 4**. Consistent with the Assignment, the proceeds of the Insurance Policy totaling $1,003,494.40 (the "Insurance Proceeds") were disbursed to Raizy and deposited into Raizy's Account on July 28, 2022. SMF ¶ 11; Raizy Decl. ¶ 13 & **Ex. 5** at BOA00164. Prior to the receipt of the Insurance Proceeds, Raizy's Account held only $25.46. SMF ¶ 12; Raizy Decl. ¶ 14 & **Ex. 5** at BOA00164. Raizy's Account is now comprised solely of the Insurance Proceeds and the prior $25.46 balance. SMF ¶ 13; Raizy Decl. ¶ 15.

As set forth above, Moshe has been named on Raizy's Account since it was opened and has remained named on the account solely for convenience and emergency purposes, such as in the event of Raizy's death, disability, or illness. There has not been any reason to change the nature of the account. Raizy Decl. ¶ 8. Neither Raizy nor Moshe has withdrawn any money from Raizy's Account since the Insurance Proceeds were disbursed to Raizy. SMF ¶ 14; Raizy Decl. ¶ 16 & *see generally*, **Ex. 5**.

B. **Bank of America Restrains Raizy's Account to Satisfy a Judgment Against the Judgment Debtors, Not Against Raizy**

On or about November 24, 2020, five years after Moshe assigned the Insurance Policy to Raizy, Bank of America filed a complaint against the Judgment Debtors in the Southern District of New York, Civil Action No. 1:20-cv-09911, for claims arising out of alleged breaches of a loan and security agreement (the "Judgment Action"). SMF ¶ 15. Notably, Raizy was not a party to the agreements at issue and was not a party to the Judgment Action. *Id.* ¶ 16, Raizy Decl. ¶ 18.

On April 29, 2022, Bank of America obtained a judgment against the Judgment Debtors, including Moshe, in the Judgment Action, which was amended on June 13, 2022, in the amount of $5,945,899.78 (the "Judgment"). SMF ¶ 17; Raizy Decl., **Ex. 6**. As Raizy was not a party to the Judgment Action, the Judgment is not against Raizy. SMF ¶ 18; Raizy Decl., **Ex. 6**.

In connection with its efforts to collect the Judgment, Bank of America issued an information subpoena with restraining notice, dated July 26, 2022 (the "Restraining Notice"), to Signature Bank. *See* SMF ¶ 19; Raizy Decl. ¶ 21 & **Ex. 7**. In the Restraining Notice, Bank of America demanded that Signature Bank restrain Raizy's Account. SMF ¶ 20. As a consequence of the Restraining Notice, Bank of America restrained $1,003,519.86 of Raizy's money in Raizy's Account to satisfy the Judgment. SMF ¶ 21; Raizy ¶ 23 & **Ex. 8**.

As set forth above, Raizy's Account is almost entirely comprised of the Insurance Proceeds, the rights and title to which were indisputably assigned to Raizy over seven years before the Judgment was entered. Raizy Decl. ¶¶ 9-11. As such, Moshe has no rights, title, or interest in the Insurance Proceeds in Raizy's Account. In sum, Bank of America restrained over $1 million of Raizy's money to satisfy the Judgment, even though the Judgment was not entered against her and cannot be executed against her.

C.  **Bank of America Files this Turnover Action**

On November 18, 2022, Bank of America filed the Petition in this action demanding a turnover of the funds that belong solely to Raizy, who is ***not*** one of the Judgment Debtors. *See generally*, Petition. Specifically, the Petition's fifth cause of action alleges that the proceeds of the Insurance Policy in Raizy's Account belong to Moshe. *Id.* ¶¶ 22-23. Based on this false assertion, the Petition demands the turnover of all of the proceeds of the Insurance Policy and one half of the remaining balance in Raizy's Account, which is just $25.46. *Id.* ¶¶ 24, 26.

D.  **Discovery Confirms that Raizy Is the Sole Owner of the Funds in Raizy's Account**

At her deposition, Raizy testified unequivocally that she opened Raizy's Account with Moshe so that she would have a separate account from which she could pay for expenses related to her children's weddings and certain other transactions that she directed. SMF ¶¶ 5-6; Raizy Tr. at 63:5, 14-16 ("It's my account"); 59:5-9 ("It's a wedding account…I use this account to marry off the kids."); 60:3-13, 18-19 ("Q. So it's only -- just to clarify, was only used for weddings and for marrying off your children, associated with weddings?... A. Yes, it was – it's all related to weddings."). Raizy and Moshe also testified unambiguously that Raizy, alone, controls this account, including the physical checkbook. SMF ¶¶ 5, 8-9; *see, e.g.*, Raizy Tr. at 63:14-16 ("It's my account, and I issue the checks unless I ask him to do some checks which I do, at times.");

82:4-6 ("If it went out from the account of here, then I'm the one instructing because it's my account."); *see also* Moshe Tr. at 36:15-16 ("She is the manager on the account.").

This testimony is corroborated by the undisputed documentary evidence, which shows that the formal name of Raizy's Account is the "Moshe Gold & Raizy Gold - Wedding Account." SMF ¶ 4; *see e.g.*, Raizy Decl., **Ex. 2**.; *see also generally* Kincaid Decl., **Ex. C** ("Ex. C"). The account does not have an associated debit or credit card, and the record is clear that virtually all of the checks written from that account were to pay wedding expenses for Raizy's children. SMF ¶ 5; *see generally,* Kincaid Decl., **Ex. C**; Raizy Tr. at 60:20-23; 61:3; 63:17-23.

Indeed, the checks written from that account expressly identify various wedding-related services. For example, on March 17, 2021, Raizy wrote a check to Rabbi Yoel Jacobowitz for performing religious services associated with one of the weddings. SMF ¶¶ 4-6; **Ex. C** at BOA00225. Similarly, on February 10, 2022 and March 7, 2022, Raizy wrote checks to Gala's Custom Design, which is a dressmaker that caters to Raizy's orthodox Jewish community, as payment for wedding dresses and related services. SMF ¶¶ 4-6**; Ex. C** at BOA00199, BOA00212. And, on March 21, 2022, Raizy wrote two checks to "Shira Choir," who provided musical entertainment for one of her children's weddings. SMF ¶¶ 4-6; **Ex. C** at BOA00217, BOA00221.

In fact, given that virtually all checks written from Raizy's Account until it was restrained were clearly written by Raizy in connection with the weddings, Bank of America elected to question Raizy concerning only a small fraction of the checks disclosed in discovery from Respondents and Signature Bank itself, all of which Raizy confirmed that she used to pay for various wedding-related expenses. Specifically, out of the total of 79 checks in Bank of America's more than 3,800-page document production, Bank of America questioned Raizy regarding only 23 checks, and Raizy testified that those checks paid for wedding expenses and identified the specific

wedding services corresponding to each check. *See generally*, Raizy Tr. at 78-107; *see, e.g.*, *id.* 105:4-6 (check paid for the wedding "choir"); 106:20 (same, for "piano").[1]

Likewise, while Moshe signed certain checks, Raizy unequivocally testified that Moshe did so only at her express direction. SMF ¶¶ 5, 9; Raizy Tr. at 63:14-16 ("It's my account, and I issue the checks unless I ask him [Moshe] to do some checks which I do, at times."); 82:4-6 ("If it went out from [Raizy's Account], then I'm the one instructing because it's my account"); 78:9-11, 15 ("[Moshe signed the checks] [b]ecause I asked him to."); 79:7-10, 13-14 (Moshe signed the checks only because "I asked my husband [Moshe] to do it"); Moshe Decl. ¶ 13. Indeed, out of 79 total checks, Raizy signed 64 checks, while Moshe signed only 16 checks over the course of two years. SMF ¶ 9; *see generally,* **Ex. C**. Moreover, in testifying concerning the 16 checks that she asked Moshe to sign, Raizy identified specific wedding services corresponding to 15 checks[2] and confirmed that the final check was for a charitable donation to her neighborhood community synagogue.[3]

---

[1] Raizy was unable to recall specific wedding services in connection with only five small checks, all of which she confirmed that she signed. *See* Raizy Tr. at 97:5-11 & **Ex. C** at BOA00198 (check No. 749 for $100); Raizy Tr. at 97:2-11 & **Ex. C** at BOA00200 (check No. 804 for $505.00); Raizy Tr. at 93:6-19 & **Ex. C** at BOA00188 (check No. 719 for $2,595, paying Raizy's credit card bill); Raizy Tr. at 98:5-19 & **Ex. C** at BOA00210 (check No. 813 for $45.00); Raizy Tr. at 103:5-17 & **Ex. C** at BOA00226 (check No. 794 for $1,600).

[2] *See* Raizy Tr. at 91:21-24 (check No. 742, testifying that it relates to wedding services); 97:19-24 (check No. 778, same "for the wedding"); 107:3-6 (check No. 795, same for "flower[s]"); 92:18-23 (check No. 743, same for the "signer"); 94:7-13 (check No. 746, same for the "choir"); 100:8 (check No. 808, same for "cantor"); 102:23-25 (check No. 783, same for "prayers"); 106: 6-9 (check No. 784, same for "singing"); 104:12 (check No. 820, same for "entertain[ment]"); 99:14-16 (check No. 791, for "wedding package"); 101:11-12 (check No. 745, for "recording from the wedding"); 102:3-5 (check No. 790, for wedding "video"); 95:6-8 (check No. 747, for Raizy's son's post-wedding living arrangement); 105:15-16 (check No. 777, same); *see also* **Ex. C** at BOA00206 (check No. 776, same).

[3] Raizy Tr. at 78:15, 79:7-10, 23-25, 80:1-6 (check No. 740) (explaining that she knew that Moshe was "involved" with Golden Gate Charitable Remainder Unitrust and, therefore, she chose to make

As set forth above, this testimony is corroborated by the documentary evidence. *See supra* at 7-8, n.1, 2. For example, Raizy testified that she directed Moshe to issue check no. 745, dated November 15, 2021, to pay for a "recording from the wedding," which is entirely consistent with the check itself, which was paid to the order of "MK Recording Studios." SMF ¶ 9; *compare* **Ex. C** at BOA0190, *with* Raizy Tr. at 101:11-12. Similarly, Raizy testified that she directed Moshe to issue check no. 747, dated January 7, 2022, as part of a wedding gift to their son, Shia, by which they paid rent for Shia and his wife for a few months, which is corroborated by the check itself, which is written to "R C Management NY LLC" for "Rent A-3 F." SMF ¶ 9; *compare* **Ex. C** at BOA0194, *with* Raizy Tr. at 95:6-12.

Raizy's testimony has also confirmed that the funds in Raizy's Account belong solely to Raizy because Moshe assigned his entire ownership of, and interest in, the Insurance Policy to Raizy on May 22, 2015, as a birthday gift. SMF ¶¶ 6-8; Raizy Tr. at 120:24-25; 121:4 ("Q. And why was this [Assignment] prepared?... A. It was a gift to me."); 117:15-17 ("It says here [on the Assignment], May 22nd. That's birthday of me [Raizy], and it was given to me as a birthday gift."); *see also* Moshe Tr. at 125:2-9 ("I gave this as a gift to my wife, my interest from that life insurance policy" and "All my interest [in the Insurance Policy] goes to her."); 135:24-136:2 ("Clearly, my interest, whatever I was from day one, I gave as a present, assign all my interest to Raizy Gold."); 143:23-144:1 ("Moshe Gold is original beneficial under policy, and that policy, all the interest, what I am gave over as a present for Raizy Gold."); *see also* Assignment. When Helena Gold passed away, Raizy received these funds in Raizy's Account. SMF ¶¶ 10-11. At that

---

her donation through that trust because she "kn[ew] that [Moshe was] going to know exactly where the money [was] going to go to, to whom").

time, there was only $25.46 in the account, such that, as set forth above, the Insurance Proceeds constitute more than 99.99% of the funds in Raizy's Account. *Id.* ¶¶ 11-12.

## LEGAL STANDARD

The Court should grant Respondents partial summary judgment that Raizy is the sole owner of Raizy's Account because Respondents have demonstrated "that there is no genuine dispute as to any material fact" and that Respondents are entitled to judgment as a matter of law.[4] *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 343 (S.D.N.Y. 2020) (Swain J.). Because Respondents have made a *prima facie* showing that there is no issue of material fact, the burden then shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Windward Bora, LLC v. Mohamed*, No. 21-CV-3736-LTS-JW, 2023 U.S. Dist. LEXIS 228695, *4 (S.D.N.Y. Dec. 22, 2023) (Swain, C.J.). "[M]ere conclusory allegations or denials…cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Solid Oak Sketches, LLC*, 449 F. Supp. 3d at 343 (alterations original).

## ARGUMENT

### I.

### RESPONDENTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING PETITIONER'S FIFTH CAUSE OF ACTION AND DECLARING THAT RAIZY IS THE SOLE OWNER OF THE FUNDS IN RAIZY'S ACCOUNT

Respondents are entitled to partial summary judgment dismissing Petitioner's fifth cause of action, declaring that Raizy's Account belongs to Raizy, and lifting the restraints on the account,

---

[4] Unless otherwise indicated, all emphasis in this memorandum of law is added and all internal quotation marks and internal citations are omitted.

because the undisputed evidence conclusively demonstrates that Raizy is the sole owner of the funds in Raizy's Account.

The law is clear that the presumption of joint ownership of a joint bank account may "be rebutted by providing direct proof that no joint tenancy was intended or substantial circumstantial proof that the joint account had been opened for convenience only." *Edelson v. Cheung*, 20-MC-1995 (ARR)(SJB), 2023 U.S. Dist. LEXIS 34105, *9 (E.D.N.Y. Mar. 1, 2023). Accordingly, if a spouse opens a joint account "as a matter of convenience, and not with the intention of conferring a beneficial interest," that spouse has full ownership over the funds, and a judgment creditor's motion seeking turnover of such funds must be denied. *See Filippi v. Filippi*, 53 A.D.2d 658, 659 (2d Dep't 1976); *Edelson*, 2023 U.S. Dist. LEXIS 34105, at *13. "In evaluating whether the joint account was established with the intention of creating joint tenancy, New York courts generally consider the totality of circumstances," including the source of the funds, the purpose for which the funds were to be used, and which party had control of and used the account. *Edelson*, 2023 U.S. Dist. LEXIS 34105, at *8-13. As set forth above, these factors weigh heavily in Raizy's favor here because (i) the funds in the account are the Insurance Proceeds, which were assigned to her more than seven years before the Judgment, (ii) the funds were primarily used for wedding expenses, and (iii) Raizy indisputably controlled the account.

Unsurprisingly, New York courts routinely find that parties have rebutted a presumptive joint tenancy on facts substantially less compelling than the record here. For example, in *Edelson*, the district court adopted the magistrate judge's report and recommendation denying turnover of a safe deposit box where, among other things, the judgment debtor's wife testified that (i) she added her husband's "name to the account [as] a matter of convenience in the event of her illness or

death" and (ii) the "proceeds were a gift to [judgment debtor's wife] from her parents and she used them sparingly in support of her siblings." *Edelson*, 2023 U.S. Dist. LEXIS 34105, at *10.

Similarly, in *Wacikowski v. Wacikowski*, the Appellate Division affirmed the trial court's decision granting a mother's motion for summary judgment that she was the sole owner of a nominally joint account held with her son. 93 A.D.2d 885 (2d Dep't 1983). There, the mother asserted that "she never intended to give her son a present beneficial interest in this account during her lifetime, but only intended to add his name to the account for her own convenience in making withdrawals in the event of emergencies." *Id.* at 885. The son's deposition testimony confirmed, among other things, that "all the money in the account" was his mother's and that she controlled "the account passbook." *Id.* Accordingly, the Appellate Division concluded, the son "produced insufficient evidence that his mother intended a joint tenancy to successfully oppose her motion for summary judgment." *Id.*

Likewise, in *In re Carella*, the court denied the bankruptcy trustee's motion for turnover of the funds in a joint bank account held by a father and son. 340 B.R. 710 (Bankr. W.D.N.Y. 2006). In so doing, the court explained that a "joint account may fulfill the requirement of 'convenience' in many different ways. Some depositors may seek the convenience of a second party to handle transactions, or the convenience of a 'stand-by' arrangement in the event of an unforeseen calamity" but the "key issue is whether a party truly intends to transfer ownership, or merely seeks a short-hand method to accomplish some other legitimate purpose." *Id.* at 712. As such, the court held that "the facts show an intent for the father to retain control of the account, and that this control indicates a retention of ownership by the father" including because the father added the son to the account "to assure an orderly transfer of assets" in the event of his death, and "gave instructions that the son was to access the funds only upon the father's direction." *Id.*

Finally, in *Filippi*, the "uncontradicted evidence of the parties reveals that the funds for the accounts came solely from respondent's profit sharing plan," that he "placed the funds in joint names for convenience and emergency purposes," and "he maintained control of the passbooks and certificates." 53 A.D.2d at 659. On these facts, the Appellate Division affirmed the trial court's holding that respondent rebutted the presumptive joint tenancy in the bank accounts because "the proof demonstrates that the joint account was created as a matter of convenience, and not with the intention of conferring a beneficial interest." *Id.; see also, e.g.*, *Pinasco v. Ara*, 219 A.D.2d 540, 540-41 (1st Dep't 1995) ("the record reveals that the plaintiff successfully rebutted the presumption of a true joint tenancy in the account" where plaintiff "exclusively possessed the check book" and made virtually "all withdrawals from the account"); *Jacks v. D'Ambrosio*, 69 A.D.3d 574, 575 (2d Dep't 2010) ("the defendants rebutted the statutory presumption by presenting evidence showing that the depositor established the account for convenience and not with the intention of conferring a present beneficial interest on the plaintiff").

The Court should reach the same conclusion here because the unrebutted factual record establishes that the funds in Raizy's Account have always belonged solely to Raizy and that Moshe was named as a joint owner only for Raizy's convenience. As detailed above, both Moshe and Raizy unambiguously testified that Raizy's Account was opened so that Raizy would have a separate account from which she could pay for expenses related to her children's weddings, including entertainment, flowers, and gifts. SMF ¶¶ 3-5; Raizy Tr. at 63:5, 14-16; 59:5-9; 60:3-13, 18-19; Moshe Tr. at 37:15-16; Raizy Decl. ¶¶ 5-7. This testimony is corroborated by the undisputed documentary evidence, which shows that (i) the formal name of Raizy's Account from its inception has been the "Moshe Gold & Raizy Gold – Wedding Account," and (ii) nearly all outgoing payments from that account were made by Raizy to pay wedding expenses for Raizy's

children, or for other purposes that Raizy specifically directed. SMF ¶¶ 3-5, 9; **Ex. C** at BOA00165-242; Raizy Tr. at 78-107. By contrast, there is no evidence on the record that Moshe ever transacted from this account without Raizy specifically directing him to do so. *See, e.g.*, *In re Carella*, 340 B.R. at 712 (presumption of joint account rebutted where father "gave instructions that the son was to access the funds only upon the father's direction").

Further, as set forth above, Raizy controlled the checkbook, and only issued checks to Moshe for the purposes of specific transactions. *Compare* Raizy Tr. at 63:14-16 ("It's my account, and I issue the checks unless I ask him to do some checks which I do, at times."), *with Pinasco*, 219 A.D.2d at 540-41 ("the record reveals that the plaintiff successfully rebutted the presumption of a true joint tenancy in the account" where plaintiff "exclusively possessed the check book"), *and Filippi*, 53 A.D.2d at 659 ("placed the funds in joint names for convenience and emergency purposes" and "he maintained control of the passbooks and certificates"), *and Wacikowski*, 93 A.D.2d at 885 (mother controlled "the account passbook").

This is confirmed by the fact that while Moshe signed a paltry 16 out of the total of 79 checks written from Raizy's Account over the period of two years, both Moshe and Raizy confirmed that Moshe signed each of these 16 checks at the express direction of Raizy and for her convenience to ensure that Raizy's children's wedding expenses were promptly paid. SMF ¶¶ 3-6, 8-9; Raizy Tr. at 63:14-16; 82:4-6; 78:9-11, 15; 78-102; *see supra* at 8, n.2, 3 (addressing each check signed by Moshe); Moshe Tr. at 36:15-16 ("She is the manager on the account."); *see also* Raizy Decl. ¶¶ 5-7.

The documentary evidence along with Raizy and Moshe's testimony also confirms that the Insurance Proceeds comprise virtually the entirety of the funds in Raizy's Account, and that such proceeds belong solely to Raizy. Specifically, the notarized Assignment demonstrates that on May

22, 2015, Moshe assigned all rights and interest in the benefits of the Insurance Policy to Raizy, at which point Raizy acquired all rights to the proceeds of that policy – *i.e.*, Raizy received the right from Moshe to own the proceeds of the Insurance Policy. SMF ¶¶ 6-8; Assignment; *see also Deutsch v. Upper Level*, 648 N.Y.S.2d 601, 601 (1st Dep't 1996) (assignment of the proceeds of a life insurance policy divests the beneficiary of "both ownership and beneficiary interest in such policy," and the assignee's right to the proceeds are then "superior to those of its beneficiary"). As detailed above, Raizy and Moshe's testimony confirmed the assignment of Moshe's Insurance Proceeds to Raizy. SMF ¶¶ 6-8; Raizy Tr. at 120:24-25; 121:4; 117:15-17; Moshe Tr. at 125:2-9; *see also* Raizy Decl. ¶¶ 9-11. The record further establishes that when the insurance proceeds were wired into Raizy's Account, the account had only $25.46 in it, such that the Insurance Proceeds totaling $1,003,494.40 constitute virtually the entirety of the balance in Raizy's Account as of August 2022 – the date it was restrained. *Compare* Raizy Decl. ¶¶ 14-15 *and* Raizy Decl., **Ex. 5** at BOA00164, *with Wacikowski*, 93 A.D.2d at 885 ("all the money in the account has been solely her own"), *and Edelson,* 2023 U.S. Dist. LEXIS 34105, at *10 ("proceeds were a gift to [judgment debtor's wife] from her parents and she used them sparingly in support of her siblings").

Accordingly, it is indisputable that the funds in Raizy's Account belong solely to Raizy, who is **not** a judgment debtor, and that the restraints should be lifted. *See Viggiano v. Viggiano*, 136 A.D.2d 630, 631 (2d Dep't 1988) (a levy of a money judgment "is effective only as to the actual interest of that judgment debtor in the account").

**CONCLUSION**

For the foregoing reasons, Respondents respectfully request that the Court grant the motion in full.

Dated: New York, New York
June 21, 2024

By: _____
Terrence A. Oved
Glen Lenihan
Andrew L. Kincaid
Aleksandra Lamontanaro
OVED & OVED LLP
*Attorneys for Respondents*
*City View Blinds of N.Y. Inc., Cosmopolitan Interior NY Corporation, JLM Decorating NYC Inc., Cosmopolitan Interior Florida Corp., Moshe Gold, and Raizy Gold*
401 Greenwich Street
New York, New York 10013
Tel. 212.226.2700
*terry@oved.com*
*glenihan@oved.com*
*akincaid@oved.com*
*alamontanaro@oved.com*

## STATEMENT OF COMPLIANCE WITH INDIVIDUAL PRACTICES

      I hereby certify pursuant to Rule A.2.h of the Individual Practices of Chief Judge Laura Taylor Swain that this memorandum of law contains 15 pages and complies with Local Civil Rule 11.1.

                                                               Andrew L. Kincaid