UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BANK OF AMERICA, N.A.,

                *Petitioner*,

  - against -                                      Case No.: 1:22-cv-09871-LTS-JW

CITY VIEW BLINDS OF N.Y. INC.,                     **DECLARATION OF**
COSMOPOLITAN INTERIOR NY                          **MOSHE GOLD**
CORPORATION, JLM DECORATING NYC INC.,
COSMOPOLITAN INTERIOR FLORIDA CORP.,
MOSHE GOLD, SIGNATURE BANK, AND RAIZY
GOLD,

                *Respondents*.
------------------------------------------------------------------X

       **Moshe Gold** declares the following to be true under the penalties of perjury, pursuant to 28 U.S.C. § 1746:

       1.      I am a Respondent in the above-captioned matter. As such, I am fully familiar with the facts and circumstances herein.

       2.      I submit this declaration in opposition to Petitioner Bank of America, N.A.'s ("Bank of America" or "Petitioner") motion (i) for summary judgment on its First, Second, Third, Fourth, and Fifth Causes of Action in the Verified Petition (the "Petition") including for turnover of the funds in the Flagstar Bank account (formerly Signature Bank, and referred to as "Signature Bank" for consistency) ending in *8641 ("Raizy's Account"); and (ii) striking Respondents' response to petition and affirmative defenses ("Petitioner's Motion").

       3.      As set forth in my declaration dated June 18, 2024 (ECF No. 108), on or about September 28, 2002, the John Hancock Life Insurance Company issued a life insurance policy (the "Insurance Policy") to my mother, Helena Gold. ECF No. 108 ¶ 3. The Insurance Policy identified me as the beneficiary. *Id.* ¶ 4.

4. In approximately 2010, Raizy opened Raizy's Account with me, primarily so that Raizy could pay for expenses associated with our children's weddings, and, accordingly, she specifically named it the "Moshe Gold & Raizy Gold - Wedding Account" in the account opening documents. *Id.* ¶ 5. Raizy only made me a signatory to that bank account for her convenience, including so that I could write and deposit checks at her express direction or control the account in the event of her suffering illness or disability. *Id.* ¶ 6. It was never intended that I would have any discretionary control over the account. *Id.* ¶ 7.

5. In 2015, I decided to assign the Insurance Policy to Raizy to ensure that in the event of my death, disability, or illness, Raizy would have at least the proceeds of the Insurance Policy (the "Insurance Proceeds") to pay for her living expenses and provide for our children. *Id.* ¶ 8. Accordingly, on Raizy's birthday, May 22, 2015, I assigned my entire ownership of and interest in the Insurance Policy to Raizy by a duly notarized Assignment of Life Insurance Policy (the "Assignment"). *Id.* ¶ 9; *see also* ECF No. 106-3. Pursuant to the Assignment, any and all amounts payable under the Insurance Policy belong entirely to Raizy, and I have no interest or ownership over those proceeds. ECF No. 108 ¶ 10.

6. On June 22, 2022, my mother, Helena Gold, passed away. ECF No. 108 ¶ 11. Shortly after my mother's passing, I completed an insurance claim form and submitted it to John Hancock. *See* ECF No. 102-9. I identified Raizy's Account as the destination for the Insurance Proceeds. ECF No. 108 ¶ 12.

7. The Insurance Policy did not require that we provide John Hancock with a copy, or notice, of the Assignment, so we had not previously advised John Hancock of the Assignment. *See* ECF No. 106-1. Accordingly, when I submitted the insurance claim, I identified myself as the beneficiary, which was consistent with John Hancock's records, rather than introduce the potential,

and unnecessary, complication of the Assignment at the same time as submitting the claim. *See* ECF No. 102-9.

8. After Raizy reviewed Petitioner's Motion, she asked me about letters that I had sent to John Hancock. Initially, I did not recall these letters, but Raizy reminded me that in the days following my mother's passing, Raizy had inquired with me regarding the Insurance Policy that I had assigned to her.

9. My conversations with Raizy refreshed my memory that, when she asked me about the Insurance Proceeds, I responded that I had submitted a claim to John Hancock identifying Raizy's Account as the account to receive the Insurance Proceeds.

10. When Raizy heard this, she expressed concern that her money could be improperly restrained or otherwise entangled as a consequence of the judgment obtained by Bank of America against me, among others, but not against Raizy.

11. Accordingly, she immediately directed me to ensure that the Insurance Proceeds would not be deposited into a joint account, where they might be improperly restrained. As with the numerous checks that Raizy has directed me to write from Raizy's Account and other instructions that she has given me throughout our marriage, Raizy did not tell me specifically how I should change the destination of the Insurance Proceeds.

12. Consistent with Raizy's direction, and as is reflected in my letters, I repeatedly communicated with John Hancock in an effort to fulfill Raizy's direction, including by requesting that the Insurance Proceeds be provided as a check, which Raizy could then direct to be deposited into an account of her choosing. *See* ECF No. 102-9.

13. Unfortunately, John Hancock did not follow my instructions, and on July 28, 2022, they wired the Insurance Proceeds to Raizy's Account, where they have been restrained for nearly two years, precisely as Raizy feared.

14. For the reasons set forth above and in the accompanying memorandum of law, Respondents respectfully request that this Court deny Petitioner's Motion in its entirety.

15. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       July 19, 2024

_____
Moshe Gold