**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BANK OF AMERICA, N.A.,** ) | Case Number: 22-cv-09871-LTS-JW |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | |
| ) | |
| **CITY VIEW BLINDS OF N.Y. INC.,** ) | |
| **COSMOPOLITAN INTERIOR NY** ) | |
| **CORPORATION**, **JLM DECORATING** ) | |
| **NYC INC., COSMOPOLITAN** ) | |
| **INTERIOR FLORIDA CORP.**, **MOSHE** ) | |
| **GOLD, SIGNATURE BANK, and** ) | |
| **RAIZY GOLD**, ) | |
| ) | |
| *Respondents.* ) | |
| ) | |

---

**REPLY MEMORANDUM OF LAW OF PETITIONER BANK OF AMERICA, N.A.**
**IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Dated: August 6, 2024

Respectfully submitted,

CHAPMAN AND CUTLER LLP

By: /s/Michael Adam Samuels
Michael Adam Samuels
1270 Avenue of the Americas, 30th Floor
New York, NY 10020
Telephone:    (212) 655-2540
Facsimile:    (646) 862-9050
msamuels@chapman.com
*Attorneys for Petitioner Bank of America, N.A.*

ON THE BRIEF:
Michael Adam Samuels
Daniel F. Flores

**TABLE OF CONTENTS**

                                                                                                    PAGE

PRELIMINARY STATEMENT......................................................................................................1

REPLY ARGUMENT ...................................................................................................................3

    I.      THE DOCTRINE OF COLLATERAL ESTOPPEL, WHICH HAS NOT BEEN
            WAIVED BY THE PETITIONER, PRECLUDES THE JUDGMENT DEBTORS
            AND RAIZY RESPONDENTS FROM RELITIGATING THE OWNERSHIP OF
            THE 8641 JOINT ACCOUNT AND THE RESTRAINED FUNDS...........................3

           A.      Petitioner Has Not Waived Its Right to Invoke the Collateral Estoppel
                      Doctrine........................................................................................................4

           B.      The Doctrine of Collateral Estoppel Prohibits the Judgment Debtors and Raizy
                      Respondents from Relitigating the Findings of the State Court Order. .............5

    II.     SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE
            PETITIONER .................................................................................................8

CONCLUSION..............................................................................................................................11

PAGE

**Cases**

*Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 371 (2d Cir. 1997) ........................................ 6

*Edelson v. Cheung*, 20-MC-1995 (ARR)(SJB), 2023 U.S. Dist. Lexis 34015, at *8-13 (E.D.N.Y. Mar. 1, 2023) ................................................................................................................. 8

*Evans v. Syracuse City School Dist.*, 704 F.2d 44 (2d Cir. 1982) ........................................ 4

*Fillipi v. Fillipi*, 53 A.D.2d 658, 659 (2d Dep't 1976) .............................................. 8

*Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018) ............................................ 6

*H. Daya Int'l, Co. v. Do Denim, LLC*, 16-cv-8668 (VM), 2022 US Dist. LEXIS 60918 (S.D.N.Y. Mar. 31, 2022) .............................................................................................. 10

*In re Carella*, 340 B.R. 710 (Bankr. W.D.N.Y. 2006) .............................................. 8

*In the Matter of Application of Raizy Gold v. Bank of America, N.A. et al.*, Index No. 532597/2022 ................................................................................................ 2

*Lakah v. USB AG*, No. 07-cv-2799 (MGC), 2014 U.S. Dist. LEXIS 154231 *5 (S.D.N.Y. Oct. 30, 2014) ................................................................................................ 4

*Martinez v. Nash Finch Co.*, No. 11-cv-02092-MSK-KLM, 2013 U.S. Dist. LEXIS 45586 (D. Colo. Mar. 29, 2013) .................................................................................... 5

*Marvel Characters, Inc. v. Simon*, 310 F.2d 280, 288 (2d Cir. 2002) .............................................. 5

*Matter of Bramble v NY City Dept. of Educ.*, 125 A.D.3d 856 (2d Dep't 2015) ............................. 7

*Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 317 (S.D.N.Y. 2000) ...................... 4

*Russell-Newman, Inc. v. The Robeworth, Inc.*, No. 00 Civ 9797, 2002 US Dist. LEXIS 15323 at *9 (S.D.N.Y. Aug. 19, 2002) ...................................................................... 5, 6

*Sprecher v. Graber*, 716 F.2d 968, 972 (2d Cir. 1983) ........................................................... 7

*Veleron Holding, B.V. v. Stanley*, No. 12-cv-5966 (CM), 2014 U.S. Dist. LEXIS 55246 at *37 (S.D.N.Y. Apr. 16, 2014) ........................................................................ 7

*Wacikowski v. Wacikowski*, 93 A.D.2d 885 (2d Dep't 1983) .............................................. 8

**Rules**

Fed R. Civ. P. 56 .............................................................................................. 1, 2, 3

Fed. R. Civ. P. 69(a) .............................................................................................. 1

NY CPLR § 408 .............................................................................................. 6

NY CPLR § 5225(b) .............................................................................................. 1

NY Local Civil Rule 56.1 .............................................................................. 1, 2, 3, 9

# PRELIMINARY STATEMENT

Petitioner Bank of America, N.A. ("**BofA**" or the "**Petitioner**") submits this Reply Memorandum of Law (the "**Reply Memorandum**") in further support of its motion (the "**Petitioner's Motion[1]**") for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure ("**Fed.R.Civ.P.**"), *inter alia*, granting summary judgment in favor of BofA: (a) on its First, Second, Third, Fourth, and Fifth Causes of Action in the Verified Petition dated November 18, 2022 (the "**Verified Petition**") (ECF, Doc. 1) against the respondents City View Blinds of N.Y. Inc. ("**City View**"), Cosmopolitan Interior NY Corporation ("**Cosmopolitan NY**"), JLM Decorating NYC Inc. ("**JLM**"), Cosmopolitan Interior Florida Corp. ("**Cosmopolitan FL**"), and Moshe Gold ("**Moshe**," collectively with City View, Cosmopolitan NY, JLM, Cosmopolitan FL, the "**Judgment Debtors**"), and Raizy Gold ("**Raizy,**" collectively with Judgment Debtors, the "**Judgment Debtors and Raizy Respondents**") and (b) directing respondent Flagstar Bank, N.A. ("**Flagstar**" or "**Garnishee**," as successor-in-interest to Signature Bank) pursuant to Fed.R.Civ.P**.** 69(a) and NY Civil Practice Law Rules ("**NY CPLR**") § 5225(b), to turn over to BofA certain funds which have been restrained by the Garnishee in connection with BofA's enforcement of a certain judgment against the Judgment Debtors.

This Reply Memorandum is in response to: (i) the Judgment Debtors and Raizy Respondents' Memorandum of Law in Opposition to Petitioner's Motion (ECF, Doc. 116, the "**Respondents' Opposition Memorandum**"), (ii) the Declaration of Raizy Gold dated July 19, 2024

---

[1]Capitalized terms used but not otherwise defined in the Petitioner's Motion shall have the meanings ascribed to such terms in the Verified Petition, the Declaration of Michael Adam Samuels dated June 21, 2024 (ECF, Doc. 111 correcting Doc. 102, the "**Samuels Decl.**"), the Declaration of Michael Adam Samuels in reply to the Respondents' Opposition Papers dated August 6, 2024 (the "**Samuels Reply Decl.**"), the Petitioner's Statement of Material Facts, pursuant to Local Civil Rule 56.1 dated June 21, 2024 (ECF, Doc. 103, the "**Rule 56.1 Statement**"), and the Petitioner's Memorandum of Law in Support of Petitioner's Motion dated June 21, 2021 (ECF, Doc. 104, the "**Petitioner's Memorandum of Law**").

(ECF, Doc. 117, "***Raizy's Opposition Decl.***"), (iii) the Declaration of Moshe Gold dated July 19, 2024 (ECF, Doc. 118, "***Moshe's Opposition Decl.***"), and (iv) the Judgment Debtors and Raizy Respondents' Response to the Petitioner's Rule 56.1 Statement dated July 19, 2024 (ECF, Doc. 119, the "***Counter-Rule 56.1 Statement***"), collectively the "***Respondents' Opposition Papers***."

The crux of the Respondents' Opposition Papers are premised on their efforts to relitigate the issue of the ownership of the restrained funds in the joint account between Moshe and Raizy ending in 8641 (the "***8641 Joint Account***"), which consist mostly of funds traceable to a July 28, 2022 wire transfer to the 8641 Joint Account from John Hancock Life Insurance Company (USA) ("***John Hancock***") in the amount of $1,003,494.40 (the "***Life Insurance Deposit***"). *See* Rule 56.1 Statement, p. 4, ¶ 11, *see* Verified Petition, p. 6, ¶¶ 27-29. The Life Insurance Deposit are the proceeds of a life insurance policy (the "***Insurance Proceeds***") for Moshe's deceased mother, Helena Gold, which named Moshe as both the owner and beneficiary (the "***Helena Gold Life Policy***"). *See* Rule 56.1 Statement, p. 4, ¶ 12, p. 9, ¶ 39, *see* Verified Petition, p. 7, ¶¶ 33-34, and Verified Petition, Exhibit "5" (ECF, Doc. 1-5).

While this action was pending for over five (5) months, a Decision and Order dated April 21, 2023, was entered on April 25, 2023, by the Supreme Court of the State of New York (the "***State Court Order***") (*see* Rule 56.1 Statement, p. 6, ¶ 20 and Samuels Decl., Exhibit "J," p. 4), in the proceeding, *In the Matter of Application of Raizy Gold v. Bank of America, N.A. et al.*, Index No. 532597/2022 (the "***State Court Proceeding***") (*see* Rule 56.1 Statement, p. 5, ¶15, *see* Verified Petition, pp. 6-7, ¶ 30), applying New York law, which: (a) denied the relief sought by Raizy (i) declaring that Raizy was the sole owner of the Insurance Proceeds in the 8641 Joint Account and (ii) to permanently restrain and bar BofA from levying upon the Insurance Proceeds

in the 8641 Joint Account and (b) dismissed the State Court Proceeding "on the merits" (*see* Rule 56.1 Statement, p. 6, ¶ 21 and Samuels Decl., Exhibit "J," pp. 4-5).

The Petitioner's Memorandum of Law sets forth the bases upon which collateral estoppel precludes the Judgment Debtors and Raizy Respondents from relitigating the state court finding that the 8641 Joint Account "is a joint account between both [Raizy] and [Moshe] and that each named tenant is possessed by the whole of the funds in the [8641 Joint Account]." *See* Rule 56.1 Statement, p. 6, ¶ 20, Petitioner's Memorandum of Law, pp. 11-14. Further, even in the event that the Court was not to give collateral effect to the State Court Order, the documentary evidence submitted in support of the Petitioner's Motion evidences: (i) the 8641 Joint Account is a joint account between Moshe and Raizy, (ii) the funds in the 8641 Joint Account were properly restrained and (iii) the Petitioner has a right to enforce its Judgment pursuant to an order for turnover of the restrained funds in the 8641 Joint Account by the Garnishee. *See* Petitioner's Memorandum of Law, pp. 16-19.

## REPLY ARGUMENT

I. **THE DOCTRINE OF COLLATERAL ESTOPPEL, WHICH HAS NOT BEEN WAIVED BY THE PETITIONER, PRECLUDES THE JUDGMENT DEBTORS AND RAIZY RESPONDENTS FROM RELITIGATING THE OWNERSHIP OF THE 8641 JOINT ACCOUNT AND THE RESTRAINED FUNDS**

The Respondents' Opposition Memorandum makes the meritless arguments that: (i) Petitioner has waived the right to invoke the collateral estoppel application of the State Court Order because the Petitioner's Motion was filed after the close of discovery and (ii) collateral estoppel effect cannot be given to the State Court Order because it was based on a "limited" factual record without discovery and it applied a different standard of proof that imposed the burden on Raizy. *See* Respondents' Opposition Memorandum, p. 12.

**A.      Petitioner Has Not Waived Its Right to Invoke the Collateral Estoppel Doctrine.**

The Petitioner's Opposition Memorandum fails to mention the applicable Case Management Plan and Scheduling Order entered in this action on June 26, 2023 (ECF, Doc. 65), as amended pursuant to an Amended Civil Case Management Plan and Scheduling Order entered on October 6, 2023 (the "***Scheduling Order***") (ECF, Doc. 72), which provides that, "Absent good cause, the Court will not have summary judgment practice in a non-jury case. Summary Judgment motions, if applicable . . . shall be filed within 30 days of the close of fact or expert discovery (whichever is later)." *See* Samuels Reply Decl., p. 2, ¶¶ 3-4, Samuels Exhibit "L," Scheduling Order, p. 5, ¶ 14. On February 20, 2024, twenty-six (26) days after the close of fact discovery [January 25, 2024], the Petitioner moved by letter motion requesting with "good cause" to file a motion for summary judgment (ECF, Doc. 93)[2]. *See* Samuels Reply Decl., p. 2, ¶¶ 6-7.

The meritless argument set forth in the Respondents' Opposition Memorandum that the Petitioner has waived the right to apply the doctrine of collateral estoppel, is premised on cases which are clearly distinguishable from the instant action and are not applicable. *See Lakah v. USB AG*, No. 07-cv-2799 (MGC), 2014 U.S. Dist. LEXIS 154231 *5 (S.D.N.Y. Oct. 30, 2014) (a party sought the functional equivalent to assert an affirmative defense of collateral estoppel two years after the close of discovery); *Evans v. Syracuse City School Dist.*, 704 F.2d 44 (2d Cir. 1982) (defendant did not move to amend its answer to assert the affirmative defense of res judicata more than two years and nine months after the defense became available); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 317 (S.D.N.Y. 2000)  (party did not raise the issue of issue

---

[2] The Judgment Debtors and Raizy Respondents responded on February 23, 2024 requesting leave to file a motion for summary judgment (ECF, Doc. 96) and the Petitioner filed a reply on March 1, 2024 (ECF, Doc. 97). Pursuant to an Order dated May 13, 2024 (ECF, Doc. 98) the Court granted leave to the parties to file motions for summary judgment. *See* Samuels Reply Decl., p. 3, ¶ 9.

preclusion in a joint pre-trial order and did not establish privity with a party); *Martinez v. Nash Finch Co.*, No. 11-cv-02092-MSK-KLM, 2013 U.S. Dist. LEXIS 45586 (D. Colo. Mar. 29, 2013) (court did not apply doctrine of "nonmutual" collateral estoppel, where a party asserting collateral estoppel was not a party to a prior case and the subject of the collateral estoppel was entered into prior to the subsequent case and not raised until two years after entry). Further, the Respondents' Opposition Memorandum citations to cases, pursuant to which parties did not timely raise the affirmative defense of collateral estoppel in the pleadings, are not applicable.

Based on the timeline of this case, the clear terms of this Court's Scheduling Order and the evidentiary record, the Petitioner has not waived its right to seek the application of the collateral estoppel to the findings in the State Court Order.

**B.      The Doctrine of Collateral Estoppel Prohibits the Judgment Debtors and Raizy Respondents from Relitigating the Findings of the State Court Order.**

As set forth in the Petitioner's Memorandum, it is well settled case law that the doctrine of collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating an issue of fact that has been litigated in another proceeding. *See Marvel Characters, Inc. v. Simon*, 310 F.2d 280, 288 (2d Cir. 2002) and *see* Petitioner's Memorandum, p. 11.

Under relevant case law, the Petitioner has met its "burden of showing the identity of issues" as set forth in the State Court Order and in this action. *See Russell-Newman, Inc. v. The Robeworth, Inc.*, No. 00 Civ 9797, 2002 US Dist. LEXIS 15323 at *9 (S.D.N.Y. Aug. 19, 2002) and *see* Petitioner's Memorandum, p. 11.

Unsurprisingly, the Respondents' Opposition Memorandum fails to reference the position previously taken by the Judgment Debtors and Raizy Respondents in this case, pursuant to a Motion to Dismiss filed on December 23, 2022 (ECF, Docs. 42-44), which set forth the argument that the State Court Proceeding "is premised on the exact same facts and legal issues as this action

. . . the determination of these issues in the State Court Action will necessarily dispose of the claims in this action." (ECF, Doc. 44, p. 7). *See* Petitioner's Memorandum of Law, p. 13. In short, the Respondents themselves have previously acknowledged the obvious "identity of issues" between the instant action and the State Court Proceeding.

The Respondents' Opposition Memorandum also cites to cases that are inapplicable with respect to the issues and legal standards governing two separate actions, *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 371 (2d Cir. 1997) (actions involved different legal standards of US and French copyright law in US and French courts), and *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018) (there was not a final judgment and conflicting rulings in prior action). Despite the arguments set forth in the Respondents' Opposition Memorandum, the same legal issues and burdens of proof in this action and the State Court Proceeding are both governed by New York law. *See* Petitioner's Memorandum of Law, pp. 15-19.

In contrast to the Petitioner having met its burden as to showing the identity of issues between the State Court Proceeding and this action, the Judgment Debtors and Raizy Respondents bear the "burden of showing the absence of a full and fair opportunity to litigate." *See Russell-Newman, Inc. v. The Robeworth, Inc.* at *9, and *see* Petitioner's Memorandum, p. 11.

The Respondents' Opposition Papers fail to meet this burden. The Respondents' Opposition Memorandum argues that the State Court Proceeding did not provide for any discovery, but rather was a summary proceeding. Respondents' Opposition Memorandum, p. 15.

The Respondents' Opposition Papers fail to mention, while discovery is not an automatic right in a New York summary proceeding, under NY CPLR § 408, a party can move for leave of court to conduct discovery, which the Supreme Court of New York has broad discretion in granting or denying, pursuant to which a party must demonstrate that the requested discovery is necessary

and that providing the discovery would not unduly delay the proceeding. *See Matter of Bramble v NY City Dept. of Educ.*, 125 A.D.3d 856 (2d Dep't 2015). It should be noted that the Judgment Debtors and Raizy Respondents never sought leave of court to take any discovery in the State Court Proceeding.

The Judgment Debtors and Raizy Respondents have previously argued in this case that the State Court Proceeding was premised on the "exact same facts and legal issues as this action." (ECF, Doc. 44, p. 7). The Respondents' Opposition Memorandum, however, fails to mention the evidentiary submissions in the State Court Proceeding, including, the submissions by BofA in BofA's Verified Answer and Exhibits thereto. *See* Samuels Decl., Exhibit "I". Based upon the evidentiary record, the State Court denied the relief sought by Raizy (i) declaring that Raizy was the sole owner of the Insurance Proceeds in the 8641 Joint Account and (ii) to permanently restrain and bar BofA from levying upon the Insurance Proceeds in the 8641 Joint Account and dismissed the State Court Proceeding "on the merits." *See* Rule 56.1 Statement, p. 6, ¶ 21.

Finally, it should also be noted that the Respondents' Opposition Memorandum cites to cases where the prior actions were not summary proceedings in a New York State Court[3]. Respondents Opposition Memorandum, p. 15. As set forth in the Petitioner's Motion, the Judgment Debtors and Raizy Respondents litigated and lost in the State Court Proceeding, failed to timely perfect an appeal of the State Court Order, and are now seeking to relitigate in this Court the same issues already decided in the State Court. *See* Rule 56.1 Statement, p. 6, ¶ 20, FN 1.

---

[3] *Sprecher v. Graber*, 716 F.2d 968, 972 (2d Cir. 1983)  (the prior proceeding was merely a subpoena enforcement proceeding in the District Court); and *Veleron Holding, B.V. v. Stanley*, No. 12-cv-5966 (CM), 2014 U.S. Dist. LEXIS 55246 at *37 (S.D.N.Y. Apr. 16, 2014)  (the prior proceeding was an international arbitration and collateral estoppel was sought to be applied against a party that was not a party to the arbitration). Notably, the *Veleron* court's reasoning, included, "Collateral estoppel applies only where the party sought to be estopped from relitigating a finding has already litigated it and lost." *Veleron Holding, B.V. v. Stanley* at *36. [internal citation omitted].

## II. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE PETITIONER

The Judgment Debtors and Raizy Respondents admit that Raizy has no interest in the accounts in the names of the Judgment Debtors pursuant to which, in the First, Second, Third, and Fourth Causes of Action in the Verified Petition, the Petitioner seeks the turnover of funds from the Garnishee. *See* Counter-Rule 56.1 Statement, p. 21, ¶ 53.

With respect to the Fifth Cause of Action[4] in the Verified Complaint, the Respondents' Opposition Memorandum regurgitates many of the same arguments set forth in the Judgment Debtors and Raizy Respondents' Motion for Summary Judgment (the "***Respondents' Motion***")(ECF, Docs. 105-110), which are based on two meritless premises: (i) "Moshe was named as a joint owner only for Raizy's convenience" on the 8641 Joint Account and (ii) Raizy is the "sole owner of the funds" in the 8641 Joint Account. Respondents' Opposition Memorandum, pp. 17-24.

As more fully set forth in the Petitioner's opposition to the Respondents' Motion, *inter alia*, the Petitioner's Memorandum of Law in Opposition of the Respondents' Motion ("***Petitioner's Opposition Memorandum***")(ECF, Doc 114), these premises are undermined and not credibly supported by the factual record as established in the Petitioner's Motion.

The Respondents' Opposition Memorandum contends that Moshe was only on the 8641 Joint Account for "convenience"[5]; however, the record evidences that: (i) deposits to the

---

[4] The Respondents' Opposition Papers do not raise any opposition to the turnover of the funds from the Other Accounts (as defined in the Petitioner's Memorandum of Law, p. 3) from the Garnishee to the Petitioner.

[5] The Petitioner's Opposition Memorandum distinguishes the facts in this action with the cases cited in the Respondents' Opposition Memorandum, pp. 17-19; *Edelson v. Cheung*, 20-MC-1995 (ARR)(SJB), 2023 U.S. Dist. Lexis 34015, at *8-13 (E.D.N.Y. Mar. 1, 2023); *Fillipi v. Fillipi*, 53 A.D.2d 658, 659 (2d Dep't 1976), *Wacikowski v. Wacikowski*, 93 A.D.2d 885 (2d Dep't 1983) and *In re Carella*, 340 B.R. 710 (Bankr. W.D.N.Y. 2006).

8641 Joint Account were only made by Moshe (*see* Samuels Decl., Exhibit "H," pp. 86:25 – 87:16, Petitioner's Motion Rule 56.1 Statement, p. 8, ¶ 33), (ii) Moshe has his own checks and checkbook for the 8641 Joint Account (*see* Samuels Decl., Exhibit "F," pp. 39:25 – 40:02) and (iii) for the period from July 1, 2020 through July 31, 2022: (a) Moshe issued and executed at least sixteen (16) checks from the 8641 Joint Account, inclusive of a check issued in the amount of $2,200,000.00 made payable to the Golden Gate Charitable Remainder Unitrust pursuant to which Moshe has been the Trustee and (ii) wire transfers to the 8641 Joint Account in excess of $40,000.00 and wire transfers from the 8641 Joint Account in excess of $100,000.00. (*see* Rule 56.1 Statement, pp. 6-9, ¶¶ 23-38).

It is undisputed that virtually all of the funds in the 8641 Joint Account are from the Insurance Deposit. (see Counter-Rule 56.1 Statement, p. 6, ¶ 11). On or about June 24, 2022, Moshe provided a completed, signed insurance claim form to John Hancock (the "***Insurance Claim***"). (Samuels Decl., Exhibit "F-10," pp. BOA3815-BOA3825). Pursuant to the Insurance Claim: (i) Moshe is listed as the "Beneficiary" (*see* Samuels Decl., Exhibit "F-10," p. BOA3818); (ii) Moshe checked a box for the payment delivery option of a wire transfer to an account in Moshe's name (*see* Samuels Decl., Exhibit "F-10," p. BOA3820); (iii) which included a copy of a blank check for the 8641 Joint Account, as the account designated by Moshe to receive the insurance proceeds (Rule 56.1 Statement, p. 10, ¶¶ 40-43, and Samuels Decl., Exhibit "F-10," p. BOA3820); and (iv) which included an executed W-9 only from Moshe (*see* Samuels Decl., Exhibit "F-10," p. BOA3825). In addition, Moshe communicated in notarized letters to John Hancock on August 8, 2022 and August 24, 2022 (the "***August 2022 Letters to John Hancock***"), representing that (i) he was the beneficiary of the Helena Gold Life Policy, (ii) seeking to reverse

the Life Insurance Deposit and to redirect those funds to Moshe, and (iii) requesting a check be sent directly to Moshe. *See* Rule 56.1 Statement, pp. 10-11, ¶¶ 45-48.

During the course of the depositions conducted of Moshe[6] on January 11, 2024 (Samuels Decl., Exhibit "F") and Raizy[7] on January 23, 2024 (Samuels Decl., Exhibit "H"), their testimony was evasive on salient aspects of the Insurance Claim and representations made in the August 2022 Letters to John Hancock.

The Respondents' Opposition Papers do not provide credible evidence to: (i) rebut the presumption that the 8641 Joint Account is a joint account, (ii) support Raizy's claim of sole ownership of the Life Insurance Deposit, or (iii) address the representations made by Moshe in the August 2022 Letters to John Hancock. Rather, the Respondents' Opposition Papers, include, Moshe's Opposition Decl. and Raizy's Opposition Decl., which provide only self-serving statements which they purportedly remembered <u>only after the Petitioner's Motion was filed.</u>[8]

---

[6] When repeatedly questioned about the Insurance Claim and the August 2022 written communications between Moshe and John Hancock, Moshe was not transparent and repeatedly responded, "I don't remember." See Moshe Transcript, pp. 132:01-142:04 and 142:05-148:04.

[7] When repeatedly questioned about the Insurance Claim and the August 2022 written communications between Moshe and John Hancock, Raizy testified, "I don't know." See Raizy Transcript, pp. 127:03-132:15 and 133:16-138:22. Clearly, unlike the unsupportable and self-serving representations made in the Respondents' Opposition Memorandum, p. 22-23, FN5, this was a relevant topic that was explored at deposition and can be distinguished from *H. Daya Int'l, Co. v. Do Denim, LLC*, 16-cv-8668 (VM), 2022 US Dist. LEXIS 60918 (S.D.N.Y. Mar. 31, 2022) (deposition testimony concerning footnotes in a document). In addition, it is not plausible, that "Raizy had never seen Moshe's letters to John Hancock prior to her deposition," as asserted in the Respondents' Opposition Memorandum, p. 23, FN5. Pursuant to the record, the August 2022 Letters to John Hancock were included in the documents were previously filed in the State Court Proceeding on February 15, 2023 (*see* Samuels Decl., Exhibit "I") and subsequently produced by the Petitioner on August 7, 2023 (*see* Samuels Reply Decl., p. 2, ¶ 5, Exhibit "M").

[8] In addition, although the evidentiary record concerning the Insurance Claim, the representations made therein, and the August 2022 Letters to John Hancock were in the possession of counsel to the Judgment Debtors and Raizy Respondents' counsel (with additional copies provided at the depositions) prior to the filing of the Petitioner's Motion, these statements were not included in the Respondents' Motion. (ECF, Docs. 105-110).

## CONCLUSION

As supported by the documentary evidence, the Petitioner respectfully requests that the

Petitioner's Motion be granted in its entirety.

Dated: New York, New York
      August 6, 2024

Respectfully,

CHAPMAN AND CUTLER LLP

By:/s/Michael A. Samuels
Michael A. Samuels
Daniel F. Flores
1270 Avenue of The Americas
New York, NY 10020
Tel: (212) 655-2540
Email: msamuels@chapman.com
*Attorneys for Petitioner Bank of America, N.A.*