UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BANK OF AMERICA, N.A.,

                                        Petitioner,

                        -v-

CITY VIEW BLINDS OF N.Y. INC.,
COSMOPOLITAN INTERIOR NY
CORPORATION, JLM DECORATING
NYC INC., COSMOPOLITAN
INTERIOR FLORIDA CORP., MOSHE
GOLD, SIGNATURE BANK, AND
RAIZY GOLD,

                                        Respondents.

---

1:22-CV-09871-LTS-JW

MEMORANDUM ORDER

       In this action, Petitioner Bank of America, N.A. ("Petitioner" or "BofA") brings

claims in five counts against City View Blinds of N.Y. Inc., Cosmopolitan Interior NY

Corporation, JLM Decorating NYC Inc., Cosmopolitan Interior Florida Corp., Moshe Gold,

Raizy Gold (collectively, "Respondents" and, excluding Raizy, "Judgment Debtors"), and

Signature Bank.[1]  (Docket entry no. 1 ("Pet.") ¶¶ 45-71.)  BofA's petition seeks the turnover of

---

[1]    Pursuant to a stipulation with Signature Bank, Petitioner BofA withdrew its sixth cause of
action against Signature Bank, which alleged a deficiency in the amount of restrained
funds in the certain bank accounts.  (Docket entry no. 56.)  None of BofA's other five
claims, which seek turnover, appears to be asserted against Signature Bank, which has
not filed any papers in connection with the pending cross-motions for summary
judgment.  See Morgenthow & Latham v. Bank of New York Co., 836 N.Y.S.2d 579,
580 (App. Div., 1st Dep't 2007) ("A garnishee bank is a disinterested stakeholder, liable
only to the extent of assets belonging to the judgment debtor that were on deposit when
the plaintiffs sought to enforce the judgment.").  The Court also notes that, on March 12,
2023, Signature Bank was closed and that, on March 20, 2023, the deposits at issue were
transferred to Flagstar Bank, N.A. (Docket entry no. 56.)  The parties have referred to
Flagstar Bank as Signature Bank's successor-in-interest.  (Id.)

---

funds in certain bank accounts belonging to Respondents.  (Id.)

This Memorandum Order addresses the parties' cross-motions for summary judgment.  BofA—which holds a judgment rendered by this court in an earlier case against the Judgment Debtors for, inter alia, $5,945,899.78 plus post-judgment interest—moves for summary judgment on all five counts, seeking an order directing Signature Bank to turn over all of the funds in the certain bank accounts.  (Docket entry no. 101 ("Petitioner Mot.").)  Respondents move for summary judgment on Count Five, seeking an order: dismissing Count Five, declaring Raizy the sole owner of funds in an account referred to as the 8641 account, and lifting the restraints on that account.  (Docket entry no. 105 ("Respondents Mot.").)  The Court has jurisdiction of this action under 28 U.S.C. section 1332.

The Court has considered carefully the parties' submissions.  (Docket entry no. 103 ("Petitioner 56.1 St."); docket entry no. 104 ("Petitioner Mem."); docket entry no. 116 ("Respondents Opp."); docket entry no. 119 ("Respondents Resp. to Petitioner 56.1 St. and Counterst."); docket entry no. 122 ("Petitioner Reply"); docket entry no. 109 ("Respondents 56.1 St."); docket entry no. 110 ("Respondents Mem."); docket entry no. 114 ("Petitioner Opp."); docket entry no. 115 ("Petitioner Resp. to Respondents 56.1 St. and Counterst."); docket entry no. 120 ("Respondents Reply").)  For the reasons set forth below, Petitioner BofA's motion for summary judgment is granted in its entirety, and Respondents' motion for summary judgment is denied in its entirety.

BACKGROUND[2]

This Memorandum Order recites only the facts necessary to resolve the cross-motions for summary judgment. The following background is, unless otherwise noted, drawn from the undisputed facts in the pleadings and documentary exhibits submitted by the parties.[3]

Generally speaking, where facts stated in a party's Local Civil Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court treats such facts as true. See LOCAL CIVIL RULE 56.1(c), (d); Biberaj v. Pritchard Indus., Inc., 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012). Where a nonmoving party fails to respond to a Local Rule 56.1 Statement, the court is "permit[ted] . . . to conclude that the facts asserted in the statement are uncontested and admissible." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009). However, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." Jackson v. Fed. Exp., 766 F.3d 189, 194 (2d Cir. 2014). "In doing so, the Court may rely on other evidence in the record even if uncited." Id. (citing FED. R. CIV. P. 56(c)(3)).

---

[2]     Pincites to materials filed on ECF refer to ECF-designated pages.

[3]     Citations to "Petitioner 56.1 St." refer to the corresponding portions of both Petitioner's 56.1 Statement (docket entry no. 103) and Respondents' Response to Petitioner's 56.1 Statement and Counterstatement (docket entry no. 119). Citations to "Respondents 56.1 St." refer to the corresponding portions of both Respondents' 56.1 Statement (docket entry no. 109) and Petitioner's Response to Respondents' 56.1 Statement and Counterstatement (docket entry no. 115). Citations to each of these Local Rule 56.1 statements incorporate by reference the documents and deposition testimony cited therein. See LOCAL RULE 56.1(d).

The Underlying Judgment

On November 24, 2020, BofA commenced an action in this court against the Judgment Debtors, alleging that they were in default under a commercial loan agreement. (Petitioner 56.1 St. ¶ 3); Bank of America, N.A. v. City View Blinds of N.Y. Inc., Docket entry no. 1, No. 20-CV-9911-SLC (S.D.N.Y. Nov. 24, 2020). On February 25, 2022, Magistrate Judge Cave granted BofA's motion for summary judgment against the Judgment Debtors.[4] (Petitioner 56.1 St. ¶ 4); Bank of America, Docket entry no. 49, No. 20-CV-9911-SLC (S.D.N.Y. Feb. 25, 2022). On April 29, 2022, Magistrate Judge Cave entered a judgment in favor of BofA and against the Judgment Debtors, awarding BofA, inter alia, $5,945,899.78 plus post-judgment interest. (Petitioner 56.1 St. ¶ 5); Bank of America, Docket entry no. 54, No. 20-CV-9911-SLC (S.D.N.Y. Apr. 29, 2022).[5]

Raizy, Moshe's wife, was not a party to the action and was not named in the resulting judgment. (Respondents 56.1 St. ¶ 18.)

BofA Restrains Judgment Debtors' Accounts

Following entry of the judgment against the Judgment Debtors, BofA sought to enforce that judgment. On July 26, 2022, BofA served an Information Subpoena with Restraining Notice on Signature Bank, asserting rights to restrain funds under New York Civil Practice Law and Rules ("C.P.L.R.") section 5225(b). (Petitioner 56.1 St. ¶ 6.) A few weeks

---

[4]     The parties consented to disposition of the case by Magistrate Judge Cave. Bank of America, Docket entry no. 34, No. 20-CV-9911-SLC (S.D.N.Y. Feb. 25, 2021).

[5]     Judge Cave issued an amended judgment on June 13, 2022, which is substantially identical, in all relevant respects, to the original judgment. Bank of America, Docket entry no. 58, No. 20-CV-9911-SLC (S.D.N.Y. June 13, 2022).

later, in a letter dated August 1, 2022, Signature Bank reported that it had restrained the
following nine accounts of the Judgment Debtors (the "Restrained Accounts").  (Id. ¶¶ 7-8.)

| Account Ending | Judgment Debtor | Other Owner | Total Balance |
|---|---|---|---|
| 8439 | City View Blinds of N.Y. Inc. | None | $73.38 |
| 2457 | Cosmopolitan Interior NY Corp. | None | $112.17 |
| 2552 | Cosmopolitan Interior NY Corp. | None | $4,391.20 |
| 4904 | Cosmopolitan Interior Florida Corp. | None | $60,172.11 |
| 4052 | Moshe Gold | None | $54,544.59 |
| 5667 | Moshe Gold | None | $9.57 |
| 8641 | Moshe Gold | Raizy Gold | $1,003,519.86 |
| 8032 | Moshe Gold | Raizy Gold | $122.51 |
| 2879 | Moshe Gold | Raizy Gold | $69.37 |
| **Total** | | | **$1,123,014.76** |

On May 17, 2023, Signature Bank confirmed that the aggregate amount of funds
in the Restrained Accounts was $1,289,629.31, as of October 31, 2022.[6]  (Id. ¶ 10.)

The 8641 Account

One of the Restrained Accounts was the 8641 account, which was opened by
Moshe and his wife Raizy in or around 2010 as a co-owned joint account.  (Respondents 56.1 St.
¶ 3; Petitioner 56.1 St. ¶ 22; docket entry no. 106-2.)  The account was named the "Moshe Gold
& Raizy Gold – Wedding Account."  (Respondents 56.1 St. ¶ 4.)  Nearly all of the funds in the
8641 account are traceable to the proceeds of a policy insuring the life of Helena Gold, Moshe's
mother.  (Petitioner 56.1 St. ¶ 11.)

The insurance policy had been issued on or about September 28, 2002.  (Id. ¶ 12.)
The policy identifies Moshe as its owner and beneficiary (Respondents 56.1 St. ¶ 2; Petitioner
56.1 St. ¶ 39; docket entry no. 106-1), but Moshe purportedly assigned his entire ownership of

---

[6]     The discrepancy between the amount reported by Signature Bank on August 1, 2022 and
        May 17, 2023 is not clearly explained by the record.  In any event, the discrepancy is not
        relevant because BofA is entitled to turnover of all of these accounts.

and interest in the policy to Raizy pursuant to a May 22, 2015 Assignment of Life Insurance Policy agreement (Respondents 56.1 St. ¶ 7; docket entry no. 106-3).  This assignment agreement, which was never provided to the insurance company, was executed by Moshe and Raizy and was notarized by a third party.  (Docket entry no. 106-3; docket entry no. 117 ¶ 7; docket entry no. 118 ¶ 7.)  According to Moshe and Raizy, the assignment was a birthday gift for Raizy.  (Respondents 56.1 St. ¶ 7.)

Helena died on June 22, 2022.  (Id. ¶ 10.)  A few days later, on June 24, Moshe submitted a completed, and signed, claim to the insurance company.  (Petitioner 56.1 St. ¶¶ 40-43; see also docket entry no. 102-9 at 2-14.)  On the claim form, Moshe listed himself (not Raizy) as the "Beneficiary," chose the wire transfer payment delivery option, and designated the 8641 account as the account to receive the payment.  (Petitioner 56.1 St. ¶¶ 40-43.)  Moshe also submitted a W-9 to the insurance company along with the insurance claim; Raizy was not listed on this W-9.  (Docket entry no. 102-9 at 13.)

On July 28, 2022, the proceeds of the insurance policy—which totaled $1,003,494.40—were deposited into the 8641 account.  (Respondents 56.1 St. ¶ 11.)  Prior to this deposit, the 8641 account held only $25.46.  (Id. ¶ 12.)  Currently, the 8641 account is comprised solely of the insurance policy proceeds ($1,003,494.40) and the prior balance of $25.46.  (Id. ¶ 13.)

After the life insurance payout and deposit to the 8641 account, Moshe and Raizy sought unsuccessfully to reverse the wire transfer to the 8641 account.  On August 8, 2022,

Moshe faxed a notarized letter to the insurance company.[7]  (Petitioner 56.1 St. ¶ 45.)  The letter

provides:

> I am writing regarding the Life insurance claim for policy 266242 on insured, Helena Gold that was submitted.  I, Moshe Gold am the beneficiary on this policy, and I've been in touch with John Hancock [the insurance company] many times over the last few weeks regarding this claim.  Last I've verified that the funds will be mailed out via check to me at 26 Heyward St. #5L, Brooklyn NY 11249.  Instead, I've received a wire directly into my account on July 29.  I am requesting here to undo that wire and mail out a check via UPS to my home address as previously confirmed.
>
> Please have this request handled as soon as possible.

(Id. ¶ 46.)  Respondents claim that Raizy directed Moshe to send this letter to reverse the deposit

and to ensure that the proceeds from the insurance policy were not deposited into the 8641

account.  (Id. ¶¶ 45-46.)

On August 19, 2022, the insurance company faxed a letter to Signature Bank

informing the bank that "[w]e have been notified by our claimant and your client Moshe Gold

that she [sic] would like to have the proceeds from Signature Bank returned to us.  Please use

this letter as a notification with the claimant Moshe Gold's request to return the proceeds wired

to Signature Bank on July 28th of 2022 in the amount of $1,003,494.40."  (Docket entry

no. 102-9 at 22.)

On August 24, 2022, Moshe faxed another letter to the insurance company.

(Petitioner 56.1 St. ¶¶ 47-48.)  This letter again asked for the July 28 wire transfer to be reversed.

(Id.)  Again, Respondents contend that Raizy directed Moshe to send this letter to reverse the

---

[7]     On August 1, 2022, Signature Bank reported that it had restrained the 8641 account. (Petitioner 56.1 St. ¶¶ 7-8.)

deposit and to ensure that the proceeds from the insurance policy were not deposited into the 8641 account.  (Id.)  As noted above, the proceeds are currently in the account.

The New York State Court Action

On November 8, 2022, Raizy commenced an action in the Supreme Court of New York, Kings County.  (Petitioner 56.1 St. ¶ 15); see also Gold v. Bank of Am. N.A., Index No. 532597/2022, Docket entry no. 1 (N.Y. Sup. Ct., Kings Cnty. Nov. 8, 2022).  In that action, Raizy sought a "declaration that Petitioner Raizy Gold is the sole owner of the $1,003,519.86, constituting the Insurance Proceeds, in [the 8641 account] and that Respondent Bank of America is permanently restrained and barred from executing or levying upon the Insurance Proceeds or otherwise seeking to satisfy its judgment against Nominal Respondent Moshe Gold from the Insurance Proceeds."  Gold v. Bank of Am., N.A., Index No. 532597/2022, Docket entry no. 1 at 5 (N.Y. Sup. Ct., Kings Cnty. Nov. 8, 2022; (see also Petitioner 56.1 St. ¶ 16).

On April 21, 2023, the New York state court issued a decision and order dismissing Raizy's petition in its entirety.  Gold v. Bank of Am., N.A., Index No. 532597/2022, 2023 WL 4718881, at *2 (N.Y. Sup. Ct., Kings Cnty. Apr. 21, 2023).  The court explained, first, that the action—which was brought by Raizy under C.P.L.R. sections 5239 and 5240—was a "special proceeding" that was governed by the standards set forth in C.P.L.R. article 4.  Id. at 2. "Pursuant to CPLR 409(b), in a special proceeding, where there are no triable issues of fact raised, the court must make a summary determination on the pleadings and papers submitted as if a motion for summary judgment were before it," the court continued.  Id. at *2 (citing Korotun v. Laurel Place Homeowner's Ass'n, Inc., 775 N.Y.S.2d 567, 567 (App. Div., 2d Dep't 2004)). Next, the court explained that, "[u]nder Banking Law § 675, the opening of a joint bank account creates a rebuttable presumption that each named tenant is possessed by the whole of the account

so as to make the account vulnerable to a levy of a money judgment by the judgment creditor of one of the joint tenants." Id. (citing Matter of Signature Bank v. HSBC Bank USA, N.A., 889 N.Y.S.2d 242, 244 (App. Div., 2d Dep't 2009); N.Y. BANKING LAW § 675). "The presumption can be rebutted by direct proof that no joint tenancy was intended or substantial circumstantial proof that the joint account had been opened for convenience only." Id. (citing Signature Bank, 889 N.Y.S.2d at 244)). According to the court, "petitioner's [Raizy's] evidentiary submissions did not [] meet the burden of proof to rebut the presumption that the 8641 Account . . . is a joint account between both the petitioner and Moshe G. and that each named tenant is possessed by the whole of the funds in the 8641 Account." Id. Consequently, the court ruled that "the relief sought in the verified petition is hereby denied and the special proceeding is dismissed on the merits." Id.

The Instant Action

BofA commenced the instant action on November 18, 2022, seeking turnover of all of the funds in the Restrained Accounts. (Docket entry no. 1.) On December 23, 2022, Respondents moved to dismiss under the Colorado River abstention doctrine or stay BofA's petition pending the outcome of the state court action. (Docket entry nos. 42, 45.) That same day, Judge John G. Koeltl granted the stay. (Docket entry no. 46.)

Following the New York state court's April 21, 2023 dismissal of Raizy's petition, Respondents conceded that their motion to dismiss was moot (docket entry no. 53), and Judge Jennifer H. Rearden accordingly denied Respondents' motion to dismiss (docket entry no. 54). Discovery ensued, following which the pending motions for summary judgment were filed. (Docket entry nos. 101, 105.) This case was assigned to the undersigned on May 8, 2024.

<u>DISCUSSION</u>

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Holtz v. Rockefeller & Co. Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)). The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." <u>Golden Pac. Bancorp v. FDIC</u>, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).

Cross-motions for summary judgment do not alter the basic standard for summary judgment. <u>Morales v. Quintel Ent., Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." <u>Id.</u> (citing <u>Schwabenbauer v. Bd. of Educ.</u>, 667 F.2d 305, 314 (2d Cir. 1981)). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." <u>Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc.</u>, 575 F.3d 199, 204 (2d Cir. 2009) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). In that event, "the nonmoving party must come forward

with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Id. (citing Celotex, 477 U.S. at 322-23). "Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted). In determining whether there is a genuine issue of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted).

<u>Petitioner BofA's Motion for Summary Judgment</u>

BofA moves for summary judgment on all five counts of its petition, seeking an order directing Signature Bank to turn over all of the funds in the Restrained Accounts. A motion to enforce a money judgment is governed by Federal Rule of Civil Procedure 69(a), which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(1). Under C.P.L.R. section 5225(b), a judgment creditor seeking turnover of a judgment debtor's assets from a third party must show (1) that "the judgment debtor has an interest in the property that the creditor is trying to reach" and (2) either that "the judgment debtor is entitled to the possession of such property, or that the judgment creditor's rights to the property are superior to those of the party who controls or possesses that property." Hyegate, LLC v. Boghossian, No. 21-CV-1450-JGK, 2022 WL 1488171, at *2 (S.D.N.Y. May 11, 2022) (quoting Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A., 423 F. Supp. 3d 45, 51 (S.D.N.Y. 2019)).

<u>Counts One through Four: The 8439, 2457, 2552, 4904, 4052, and 5667 Accounts</u>

BofA moves for summary judgment on Counts One through Four, seeking turnover of all of the funds in the 8439, 2457, 2552, 4904, 4052, and 5667 accounts. Respondents City View Blinds of N.Y. Inc., Cosmopolitan Interior NY Corp., Cosmopolitan Interior NY Corp., Cosmopolitan Interior Florida Corp., and Moshe[8] do not oppose BofA's motion as to these four counts, and consequently abandon any arguments they might have raised in opposition.  See <u>Jackson</u>, 766 F.3d at 195 ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.").

Furthermore, it is undisputed and clear from the record that the two prongs of C.P.L.R. Section 5225(b) are satisfied and that BofA is entitled to judgment as a matter of law. First, the Judgment Debtors (City View Blinds of N.Y. Inc., Cosmopolitan Interior NY Corp., Cosmopolitan Interior NY Corp., Cosmopolitan Interior Florida Corp., and Moshe) clearly have "an interest in" the 8439, 2457, 2552, 4904, 4052, and 5667 accounts because they are sole owners of those accounts.  See <u>Commodities</u>, 423 F. Supp. 3d at 51.  Second, the Judgment Debtors are "entitled to the possession of" the accounts because they solely own those accounts and, alternatively, BofA's "rights to the property are superior to those of" Signature Bank by virtue of BofA's judgment creditor status with respect to the Judgment Debtors.  See <u>id.</u>

Accordingly, BofA is entitled as a matter of law to summary judgment on Counts One through Four and is awarded turnover of all the funds in the 8439, 2457, 2552, 4904, 4052, and 5667 accounts.

---

[8]    Raizy is omitted from this portion of the discussion because she does not have any ownership interest in any of these accounts.

Count Five: The 8641 Account[9]

In Count Five, BofA seeks turnover of all of the funds in the 8641 account, which is co-owned by Moshe and Raizy ("the Golds").  BofA contends that collateral estoppel precludes the Golds[10] from re-litigating the issue of whether the 8641 account was held in joint tenancy by Moshe and Raizy because that issue was already litigated in state court.  For their part, the Golds contend that BofA waived its right to raise collateral estoppel and that the requirements for collateral estoppel are not satisfied here.  None of the Golds' arguments has merit, and the state court's ruling on the issue has preclusive effect here.  Because the 8641 account was held in joint tenancy, BofA is entitled to turnover of all the funds in that account.

BofA Has Not Waived Collateral Estoppel

First, the Golds contend that BofA waived its right to invoke collateral estoppel because of its delay in raising the issue.  The New York state judgment was entered on April 21, 2023, and BofA first raised the issue of collateral estoppel nearly ten months later, on February 20, 2024.  (See docket entry no. 93.)  This delay, however, is not fatal to BofA's motion.

Defensive collateral estoppel is an affirmative defense that must be pleaded pursuant to Federal Rule of Civil Procedure 8(c).  Therefore, tardiness in raising collateral

---

[9]    Count Five seeks turnover of all of the funds in the 8641, 8032, and 2879 accounts.  The latter two accounts are discussed infra p. 23.

[10]    In the state court action, Raizy was the petitioner, Moshe was a nominal respondent, BofA and Signature Bank were respondents, and the other Respondents in this action were not parties.  Gold, 2023 WL 4718881, at *2.  Raizy and Moshe were nonetheless clearly in privity with one another for purposes of collateral estoppel.  See Buechel v. Bain, 97 N.Y.2d 295, 304 (2001) ("In the context of collateral estoppel, . . . privity . . . includes those . . . whose interests are represented by a party to the action" (citation omitted)).  Therefore, the Court refers to the Golds, rather than Raizy in particular, when discussing the state court action and collateral estoppel.  The other Respondents are omitted from this discussion because they do not have any ownership interest in the 8641 account.

estoppel may waive it as a defense.  See Lakah v. UBS AG, No. 07-CV-2799-MGC, 2014 WL 5475294, at *1 (S.D.N.Y. Oct. 30, 2014) ("It is well-established that a party wishing to raise an affirmative defense of collateral estoppel is obligated to plead it at the earliest possible time."); Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 315 (S.D.N.Y. 2000) ("Federal Rule of Civil Procedure 8(c) requires affirmative defenses such as claim or issue preclusion to be raised in pleadings responding to claims for relief."); see also Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 48 (2d Cir. 1983) ("[T]he failure to raise the defense of res judicata is deemed to be a waiver.").

BofA, however, does not invoke collateral estoppel defensively—as a shield. Rather, BofA seeks to use collateral estoppel offensively—as a sword.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979) ("[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.").  "Although [offensive collateral estoppel] is not subject to FED. R. CIV. P. 8(c), the rationale for requiring a party to plead defensive issue preclusion pretrial applies to offensive use as well—to provide 'the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate.'"  Harvey by Blankenbaker v. United Transp. Union, 878 F.2d 1235, 1243 (10th Cir. 1989) (quoting Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350 (1971)).  Applying this principle, courts have allowed plaintiffs to raise offensive collateral estoppel for the first time on summary judgment, if defendants are not unfairly prejudiced.  In re Fitch, 349 B.R. 133, 140-41 (Bankr. N.D. Tex. 2006) (holding that collateral estoppel need not be pleaded in a complaint and that raising collateral estoppel at summary judgment "gave ample notice" and "did not unfairly surprise" the defendant); Acceptance Indem.

Ins. Co. v. Maltez, 617 F. Supp. 2d 467, 473 n.29 (S.D. Tex. 2007) (citing Fitch for the proposition that collateral estoppel "must be pled no later than plaintiff's motion for summary judgment"); Matter of Crounse Corp., 956 F. Supp. 1384, 1388 (W.D. Tenn. 1997) (allowing collateral estoppel to be raised for the first time at summary judgment where "[i]t does not appear to the Court that [defendant] would be unfairly prejudiced or that inequity would flow from considering [plaintiff's] collateral estoppel motion"); United States v. United Air Lines, Inc., 216 F. Supp. 709, 718 (E.D. Wash. 1962) (raising collateral estoppel on summary judgment "give[s] notice to the opposite side so that it may have an opportunity to rebut the same").[11]

While BofA might have raised the issue of collateral estoppel earlier, BofA's assertion of the doctrine at summary judgment has given Respondents "ample notice" and does not present any "unfair[] surprise." Fitch, 349 B.R. at 141. Continued litigation of an issue already decided by another court would do nothing to further the primary purposes of the doctrine of collateral estoppel. See Montana v. United States, 440 U.S. 147, 153-54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.").

---

[11]    The Golds proffer as contradictory authority Martinez v. Nash Finch Co., which held that "[c]ourts require a party claiming offensive collateral estoppel to raise the issue promptly, or else be deemed to have waived it. Generally, a party seeking to raise it must do so 'at the first reasonable opportunity after the decision having preclusive effect has been rendered.'" No. 11-CV-02092-MSK-KLM, 2013 WL 1313899, at *10 (D. Colo. Mar. 29, 2013) (quoting Vanderpool v. Loftness, 300 P.3d 953, 958, as modified on denial of reh'g (Col. App., Div. I Aug. 30, 2012)). Martinez, however, is inapposite because it principally relied on Colorado state law and because it involved application of *nonmutual* offensive collateral estoppel.

<u>Collateral Estoppel Precludes Respondents' Argument that the 8641</u>
<u>Account is Not a Joint Tenancy</u>

Next, the Court considers whether the requirements for invoking collateral estoppel have been met. "To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state." <u>Conopco, Inc. v. Roll Int'l</u>, 231 F.3d 82, 87 (2d Cir. 2000); <u>see also</u> 28 U.S.C. § 1738. "[I]ssue preclusion in the sense of collateral estoppel operates to preclude relitigation of discrete issues of law and fact determined, or necessarily determined, in a prior action or proceeding." <u>Kret by Kret v. Brookdale Hosp. Med. Ctr.</u>, 462 N.Y.S.2d 896, 900 (App. Div. 2d Dep't 1983), <u>aff'd</u>, 61 N.Y.2d 861 (1984). Under New York law, to invoke collateral estoppel, BofA must show that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." <u>Conason v. Megan Holding, LLC</u>, 25 N.Y.3d 1, 17 (2015) (quoting <u>Alamo v. McDaniel</u>, 841 N.Y.S.2d 477 (App. Div., 1st Dep't 2007)). Finally, the court retains "broad discretion" to decline to apply offensive collateral estoppel where "application of offensive estoppel would be unfair to a defendant." <u>Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.</u>, 409 F.3d 87, 91 (2d Cir. 2005) (quoting <u>Parklane</u>, 439 U.S. at 331); <u>accord</u> <u>People v. Plevy</u>, 416 N.Y.S.2d 41, 44 (App. Div., 2d Dep't 1979), <u>aff'd</u>, 52 N.Y.2d 58 (1980).

Factors two and four are indisputably established. The state court considered, and decided, whether the 8641 account was a joint tenancy and whether each of the Golds was entitled to the whole of the funds in the account. <u>Gold</u>, 2023 WL 4718881, at *2 (holding that Respondents "did not [] meet the burden of proof to rebut the presumption that the 8641 Account . . . is a joint account between both the petitioner and Moshe G. and that each named tenant is

possessed by the whole of the funds in the 8641 Account"). Those determinations were necessary to the state court's dismissal of the Golds' claims "on the merits," id., and the state court's judgment is now final (see Petitioner 56.1 St. ¶ 20 n.1).

The first factor is also satisfied. The same issue concerning the 8641 account is raised here, and the Golds have admitted as much. In their motion to dismiss or stay the instant petition pending determination of the state court proceeding, the Golds argued that the state action was "premised on the exact same facts and legal issues as this action" and that "the determination of these issues in the State Court Action will necessarily dispose of the claims in this action." (Docket entry no. 44 at 11.) The Golds' primary objection, though, is that the issues are not "identical" because the state court proceeding applied a standard of review and burden of proof different from those that govern here. (Respondents Opp. at 20-21.) That argument fails.

While "a shift or change in the burden of proof can render the issues in two different proceedings non-identical, and thereby make collateral estoppel inappropriate," Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2004), the state court proceeding applied the same rebuttable presumption and standard of review that this Court would apply to the merits of the ownership claim concerning the 8641 account. In the state court proceeding, Raizy bore the burden of rebutting the presumption that the 8641 account was a joint account in which Moshe also had an interest. Gold, 2023 WL 4718881, at *2. That same rebuttable presumption would apply here because it is undisputed that the 8641 account was a co-owned joint account. N.Y. BANKING LAW § 675; Signature Bank, 889 N.Y.S.2d at 244 ("The presumption created by Banking Law § 675 can be rebutted 'by providing direct proof that no joint tenancy was intended or substantial

circumstantial proof that the joint account had been opened for convenience only.'" (quoting Fragetti v. Fragetti, 692 N.Y.S.2d 442, 443 (App. Div., 2d Dep't 1999))).

Next, in dismissing Respondents' petition under the standard of review prescribed by C.P.L.R. section 409(b), the state court necessarily held that Respondents failed to show a triable issue of fact. Gold, 2023 WL 4718881, at *2 ("Pursuant to CPLR 409(b), in a special proceeding, where there are no triable issues of fact raised, the court must make a summary determination on the pleadings and papers submitted as if a motion for summary judgment were before it." (citing Korotun v. Laurel Place Homeowner's Ass'n, Inc., 775 N.Y.S.2d 567, 568 (App. Div., 2d Dep't 2004))). That same standard of review would apply here because the Golds must show a triable issue of fact as to Raizy's allegedly exclusive rights in the account in order to survive BofA's motion for summary judgment. See Matsushita Elec., 475 U.S. at 585. Indeed, in subsequent plenary litigation, numerous courts have barred re-litigation of issues already decided in special proceedings conducted under C.P.L.R. section 409(b). See Theatre Row Phase II Assocs. v. H & I Inc., 443 B.R. 592, 598 (S.D.N.Y. 2011) (applying collateral estoppel and res judicata based on prior C.P.L.R. section 5225(b) special proceeding); Batyreva v. New York City Dep't of Educ., 07-CV-4544-PAC-DF, 2008 WL 4344583, at *9 (S.D.N.Y. Sept. 18, 2008) (applying collateral estoppel based on prior Article 78 special proceeding); Lipton v. Shea & Gould, 92-CV-7482-LAP, 1993 WL 126523, at *1, *3-4 (S.D.N.Y. Apr. 22, 1993) (applying collateral estoppel based on prior special proceeding in Surrogate's Court). Thus, the first factor for collateral estoppel is satisfied—the issues of whether Raizy is the exclusive owner of the insurance proceeds deposited into the 8641 account and whether Moshe is entitled to claim the whole of the insurance proceeds held in that account are the same as those raised in the prior state court action that rejected Raizy's claim.

Lastly, the Court turns to the third factor, whether the Golds had a full and fair opportunity to litigate the issue in the state court proceeding. Because BofA has established the other three collateral estoppel factors, "the party opposing its use (here, [the Golds]) has the responsive burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action." In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455 (1985)). In assessing this factor, New York courts consider "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." Ryan v. New York Tel. Co., 62 N.Y.2d 494, 501 (1984). None of these factors favors the Golds. The Golds were represented by the same law firm and had the same incentive to litigate—indeed, the Golds initiated the state proceeding. Nor is there any new evidence that was not available earlier: much of the evidence submitted to this Court (see Respondents 56.1 St.) was also submitted to the state court (see Gold v. Bank of Am. N.A., Index No. 532597/2022, Docket entry nos. 1-8, 39-43 (N.Y. Sup. Ct., Kings Cnty. Nov. 8, 2022) (evidentiary exhibits proffered by Raizy in state court)). The Golds' sole basis for their argument that they were denied a full and fair opportunity to litigate is that the state proceeding did not allow for discovery. (Respondents Opp. at 21.) This argument fails because the Golds could have moved for leave to conduct discovery under C.P.L.R. section 408 but never did so. Moreover, the Golds were not prejudiced by the inability to conduct discovery because their evidentiary submissions, both here and in the state court, came almost entirely from themselves, from documents and testimony already in their possession. The Golds had every opportunity to proffer that evidence in the state court proceeding.

Finally, offensive collateral estoppel should not be applied if application "would be unfair to a defendant." Bear, Stearns, 409 F.3d at 91 (quoting Parklane, 439 U.S. at 331); accord Plevy, 416 N.Y.S.2d at 44. District courts are afforded "broad discretion" in making this determination. Bear, Stearns, 409 F.3d at 91 (quoting Parklane, 439 U.S. at 331). As explained above, there is no unfairness in applying collateral estoppel here. Supra pp. 16-19.

Accordingly, all of the elements of offensive collateral estoppel are satisfied, and Respondents are barred from re-litigating the issues of whether the 8641 account is a joint tenancy and whether Moshe has a claim to the whole of the proceeds.

<u>BofA Is Entitled to Turnover of All the Funds in the 8641 Account</u>

Because the 8641 account is a joint tenancy and the state court has determined that Moshe is entitled to claim the whole of the fund in that account, BofA is entitled to turnover of all the funds in that account. As the state court held, "each named tenant [Moshe and Raizy] is possessed by the whole of the account so as to make the account vulnerable to a levy of a money judgment by the judgment creditor of one of the joint tenants." Gold, 2023 WL 4718881, at *2 (citing Signature Bank, 889 N.Y.S.2d at 244; N.Y. BANKING LAW § 675); see also Denton v. Grumbach, 157 N.Y.S.2d 91, 93 (App. Div. 3d Dep't 1956) ("[J]oint tenants are said to be seized per my et per tout, or by the half and the whole." (citing In re McKelway's Est., 221 N.Y. 15, 19 (1917))). Under these circumstances, BofA is entitled to turnover of all the funds in the joint tenancy bank account. See, e.g., Canandaigua Nat'l Bank & Tr. Co. v. Brighton Sec. Corp., 186 N.Y.S.3d 750, 751 (App. Div., 4th Dep't 2023) (holding "that all funds held in the joint brokerage account[, which was found to be a joint tenancy,] are subject to the levy of a money judgment by petitioner [judgment creditor]"); New York Community Bank v. Bank of Am., N.A., 93 N.Y.S.3d 7, 10 (App. Div., 1st Dep't 2019) (holding that "[petitioner judgment creditor]

NYCB's prima facie establishment of a joint tenancy in the safe deposit box account is evidence that Ari [the judgment debtor husband] and Rachel [his wife] also 'possess' its contents, making the whole of the account subject to NYCB's levy"); Signature Bank, 889 N.Y.S.2d at 243-45 (affirming lower court's "direct[ive to] HSBC to turn over the entirety of the subject joint bank accounts to the petitioner [judgment creditor]"); VFS Fin., Inc. v. Elias-Savion-Fox LLC, 73 F. Supp. 3d 329, 349 (S.D.N.Y. 2014) (holding that, because "the judgment debtor here, has not met that burden [to rebut the presumption that a jointly-owned account is held in joint tenancy], or, indeed, attempted to do so," the judgment creditor "is entitled to a turnover order with respect to the full [] account").

In opposition, the Golds contend that Raizy is the sole owner of the funds in the 8641 account.  (Respondents Opp. at 23-30.)  As explained above, that argument is foreclosed by the preclusive effect of the state court decision, which expressly rejected that contention.  Supra pp. 16-19.

Perhaps recognizing that the sole ownership argument is flawed, Respondents also argue that Raizy is entitled to at least one-half of the funds in the 8641 account. (Respondents Opp. at 30-31.)  Respondents, however, fail to explain how this purported fact precludes BofA from garnishing the 8641 account to satisfy its judgment.  Indeed, in denying Raizy's petition to "permanently restrain[] Bank of America from executing or levying upon the Insurance Proceeds [deposited in the 8641 account]; or otherwise seeking to satisfy its Judgment against Moshe G. from the Insurance Proceeds," the state court necessarily held that BofA was entitled to garnish the 8641 account.  Gold, 2023 WL 4718881, at *1.

Likewise, Respondents argue that there are triable issues of fact as to "whether [Raizy] is the owner of at least one-half of the funds in [the 8641 account]," thereby precluding

summary judgment.[12]  (Respondents Opp. at 30-31.)  Respondents cite several cases in support

of this proposition, but none is apposite.  First, Respondents cite to Axginc Corp. v. Plaza

Automall, Ltd., which denied a judgment creditor's motion for summary judgment to turn over

funds from the judgment debtor's bank account because there were "triable issue[s] of fact as to

whether [the debtor] owned the [funds] deposited into [the] bank account."  No. 14-CV-4648-

ARR-VMS, 2022 WL 1591054, at *5 (E.D.N.Y. May 19, 2022).  Unlike here, however, the bank

account in Axginc was not held in joint tenancy between a non-debtor and a debtor.  Id.  Instead,

the issue in Axginc was whether the debtor had "any ownership interest" in the funds because

there was evidence that the debtor had transferred those funds to other non-debtors as part of a

"years-long arrangement . . . [that] implied a promise to forward the funds due to [the non-

debtors] as the deposits . . . were made [in the debtor's account]."  Id.  Next, Respondents cite

Cadle Co. v. Satrap, 754 N.Y.S.2d 354 (App. Div., 2d Dep't 2003).  There, the judgment creditor

sought turnover of an automobile owned by the judgment debtor and his wife, and the lower

court granted that relief without conducting a hearing.  Id. at 381.  The appellate court overruled

---

[12]    The Court notes that several courts in New York have held that turnover is limited to the
extent of the judgment debtor's equitable interest in the joint tenancy bank account.  See
Martha A. Churchill, Annotation, Joint Bank Account as Subject to Attachment,
Garnishment, or Execution by Creditor of One Joint Depositor, 86 A.L.R. 5th 527 §§ 3-4
(discussing the issue); see also, e.g., Velocity Invs., LLC v. Kawski, 864 N.Y.S.2d 734,
738-39 (City Ct., Dunkirk 2008); Aish Hatorah N.Y., Inc. v. Fetman, Index
No. 22057/2013, 2015 WL 1282902, at *4 (Sup. Ct., Kings Cnty. Mar. 20, 2015); Leaf
Funding, Inc. v. HSBC Bank USA, N.A., Index No. 22761/09, 2009 WL 3784954, at *1
(Sup. Ct., Queens Cnty. Oct. 6, 2009); F.D.I.C. v. Koffman, 849 F. Supp. 176, 178
(N.D.N.Y. 1994); In re Grodetzky, 495 B.R. 223, 227-28 (Bankr. E.D.N.Y. 2012).  The
Golds, however, never raised, or even identified, this issue and have accordingly waived
it.  See Am. Tissue, Inc. v. DLJ Merch. Banking Partners, II, L.P., No. 03-CV-6913-
GEL, 2006 WL 1084392, at *6 (S.D.N.Y. Apr. 20, 2006) ("Issues not sufficiently argued
in the briefs are considered waived." (quoting Norton v. Sam's Club, 145 F.3d 114, 117
(2d Cir. 1998))).

the lower court's judgment because there were "issues of fact as to whether joint ownership was intended, and whether there was an agreement that the vehicle be the wife's separate property." Id. at 382.  Cadle is inapposite because, here, the joint ownership and separate property issues have already been determined.  Finally, Respondents cite In re Davis, 1983 Bankr. LEXIS 6226 (Bankr. W.D.N.Y. May 12, 1983).  There, a bankruptcy debtor moved to insulate a bank account owned by him and his wife from his creditor.  Id. at *1.  The court denied the debtor's motion, holding that "there is a presumption in New York State that monies deposited in such a joint account, by either party, is regarded as the joint money of each party" and that a fuller record was required to determine whether that presumption had been rebutted.  Id. at *4 (citing, inter alia, N.Y. BANKING LAW § 675).  Here, that factual issue has already been explored, and effectively resolved, by the state court.  Supra pp. 16-19.

Count Five: The 8032 and 2879 Accounts

Also in Count Five, BofA seeks turnover of all the funds in the 8032 and 2879 accounts, which are co-owned by Moshe and Raizy.  These accounts are presumed to be accounts held in joint tenancy, and Respondents, by failing to argue- otherwise, waive any arguments in opposition.  See N.Y. BANKING LAW § 675; Jackson, 766 F.3d at 195 ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.").  Because these accounts are held in joint tenancy, BofA is entitled to turnover of all the funds.  Supra pp. 20-23.

Respondents' Motion for Summary Judgment

Now, the Court turns to Respondents' motion for summary judgment, which is directed only to Count Five and which seeks: (1) dismissal of that count, (2) a declaration that Raizy solely owns the 8641 account, and (3) removal of the restraints on the 8641 account.  For

the reasons detailed above in connection with BofA's motion, Respondents' motion is, necessarily, denied.

<u>CONCLUSION</u>

For the reasons explained above, Petitioner BofA's motion for summary judgment is granted in its entirety, and Respondents' motion for summary judgment is denied in its entirety. The Court directs Flagstar Bank, N.A., as successor-in-interest to Respondent Signature Bank, to turn over to Petitioner Bank of America, N.A. all of the funds held in the accounts ending in 8439, 2457, 2552, 4904, 4052, 5667, 8641, 8032, and 2879. The Clerk of Court is respectfully directed to enter judgment in favor of Petitioner BofA and to close this case. Docket entry nos. 101 and 105 are resolved.

SO ORDERED.

Dated: New York, New York
    September 29, 2025


/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge